Murder; sentence: thirty years' imprisonment.
On the night of April 25, 1981, appellant shot and killed Sam Hogan, Jr. at the home of Sam Tompkins in Tuscumbia, Alabama. Appellant's trial testimony and statement to police indicated appellant shot the victim because he believed the victim was about to attack him with a knife, although appellant admitted he did not see a knife in the victim's possession. No other witness to the crime testified that they saw the victim threaten or appear to attack appellant in any way. The sufficiency of the evidence is not raised as an issue on appeal.
 I
Appellant contends the prosecutor directed questions to and elicited answers from Officer John Hellums which impermissibly called attention to appellant's alleged refusal to give a statement to police at the time of his arrest on the night of April 25, 1981. Appellant relies upon Houston v. State,354 So.2d 825 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 829 (Ala. 1978), for the proposition that a prosecutor must avoid all reference to or use of an accused's assertion of his right to remain silent, and that any use thereof is a violation of due process.
When Officer Hellums was first called to testify, he stated that appellant was intoxicated when he observed him at the scene of the murder on the night of April 25, 1981. During the subsequent examination of Officer Larry Potts, Potts testified that appellant was not intoxicated at the scene of the murder.
Upon being recalled to the stand after Officer Potts' testimony, Officer Hellums testified as follows in response to defense counsel's questions:
 "MR. GARGIS CONTINUES: You heard Officer Potts testify, isn't that correct?
"A Yes, sir.
 "Q You heard Officer Potts testify that the defendant was not drunk that night, isn't that correct?
"A I believe that's correct.
 "Q You also heard Officer Potts testify he was hysterical when he put him in the patrol car, isn't that correct?
"A Yes, sir.
"MR. GARGIS: No further questions."
The questions and answers referred to in appellant's argument appear immediately following the above questions and answers and are as follows:
"RE-DIRECT EXAMINATION
"BY MR. PATTON:
 "Q Now, Mr. Hellums, you heard Officer Potts say that he put him in the patrol car — how long were you with the defendant that night?
"A Approximately five minutes, I guess.
"Q Did you sit down and try to talk to him?
"A Yes, sir.
"Q Did you attempt to take a statement from him?
 "MR. GARGIS: Your Honor, I am going to object to that, it's inadmissible, it's violating his Miranda and constitutional rights.
"BY THE COURT: Overrule the objection.
 "MR. PATTON CONTINUES: Did you start to take a statement from him?
"A Yes, sir, I did.
"Q And did you quit taking a statement from him?
"A Yes, sir.
"Q Why was that?
 "MR. GARGIS: Your Honor, I want to renew the objection, because it's not admissible. If the defendant did not give a statement, that was his right under the Constitution of the United States not to give a statement.
"BY THE COURT: Overrule the objection, go ahead.
 "MR. PATTON: Why didn't you take a statement from him, John?
 "A Because the man was intoxicated, I wanted to make sure that he knew his *Page 1359 
rights, I wanted to make sure that he did not say anything that he didn't knowingly say to me later on. I wanted to protect his rights; the man was drunk and he didn't know half of what he was saying.
 "Q All right, sir, and you waited until the next morning when he had sobered up to take a statement?
"A That's correct."
It is clear that the questions and answers excepted to by appellant did not fall under the prohibition of the rule announced in Houston, supra, in that they do not evidence that appellant made any assertion of his right to remain silent. Rather, the testimony reveals that it was Officer Hellums who stopped the intoxicated appellant from making a statement in an effort to protect appellant's constitutional rights. Neither the prosecutor nor Officer Hellums said anything which indicated before the jury that appellant had exercised his right to remain silent.
It is also apparent that the questions addressed to Officer Hellums were not intended by the prosecutor to elicit substantive evidence of appellant's guilt nor to impeach the appellant's statement or testimony at trial. The prosecutor was merely attempting to rebut defense counsel's questions to Officer Hellums concerning Officer Potts' denial of appellant's intoxication.
 II
Appellant contends that the trial court erred in refusing to give his requested written charges numbers 310-340. Charge number 340 was not called to the attention of the court after the court refused to give the charge, and is not before this court for review. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982). The remaining charges were properly refused in that they were either abstract, contained misspelled words, or were incomplete, misleading and incorrect statements of the law. Hope v. State, 390 So.2d 1077, (Ala.Cr.App.), cert. denied, 390 So.2d 1083 (Ala. 1980); Bascomv. State, 344 So.2d 218 (Ala.Cr.App. 1977); Jefferson v. Cityof Birmingham, 399 So.2d 932 (Ala.Cr.App. 1981); Allen v.State, 414 So.2d 989, (Ala.Cr.App.), affirmed, 414 So.2d 993
(1982).
 III
Appellant asserts that the trial court erred in refusing to allow him to impeach a State witness during cross-examination. The record reflects the following occurred during the cross-examination of Will Davis:
 "Q Now it is your testimony, under oath, right here today that you have gone to Sam Tompkins' house and would take a drink?
"A Yes, sir.
"Q You are drinking buddies?
"A Sir?
"Q Ya'll drink together, ya'll are drinking buddies?
"A Yes, sir.
 "Q Do you recall on May 13th the district attorney's office calling you up here and you testified at the preliminary hearing when we asked questions down the hall on May 13th, do you remember that?
"A Yes, sir.
 "Q Do you remember taking an oath and swearing then that you would tell the truth?
"A Yes, sir.
"Q Now were you telling the truth on that day?
"A Yes, sir.
 "Q And it's also your testimony that you're telling the truth on this day?
"A Yes, sir.
 "Q And it's also your sworn testimony under oath right now that you go to Sam Tompkins' house and take a drink, is that correct?
"A Yes, sir.
 "Q Now on May 13th I asked you questions — page 29 —
 "MR. PATTON: If it please the Court, I want to approach the bench.
"(At this time the attorneys approached the bench)
 "BY THE COURT: Ladies and gentlemen of the jury, at this time we need to *Page 1360 
take up something outside your presence and I will ask you to go into the jury room until we call you back out. During this time, please do not discuss this case among yourselves.
"(At this time the jury left the courtroom)
 "BY THE COURT: I sustain the objection based on 156.01 and .03 McElroy's Alabama Evidence. I think the matter you are trying to go into is immaterial, you're trying to impeach someone on an immaterial matter.
 "MR. GARGIS: At this time we would like to offer proof that in prior testimony under cross examination he made a statement to me that is contrary to what he is saying now. And we at this time contend that truthfulness is always material in a case, especially when it is a material witness. Subject to that cross examination and to show bias, we are able at any time to cross examine a witness to see if they are a truthful witness and I think this is material to show he is not being truthful at this time. We expect him to say Sam Tompkins has been drinking a lot of times, he has been drinking with Sam Tompkins, where at the prior hearing he stated that he ain't never seen Sam Tompkins take a drink. And I think this goes to the credibility of this witness, and I would like to read into the record the statement that I'm making reference to in the preliminary hearing.
 "MR. PATTON: Now if it please the Court, I am going to object to him reading any statement, he can offer the whole transcript of the witness' testimony, because I think it's taken out of context. And it might be straining a gnat to believe what Mr. Gargis is saying but if you read the whole transcript in context, he is talking about a particular night when the defendant shot and killed the deceased. And if he wants to offer the whole testimony of the witness for review by the Court, I have no objection, but I do object to any mere statement taken out of context.
 "MR. GARGIS: Your Honor, at this time I would like to read the statement — the inconsistent statement in the transcript; it's on page 29 — direct examination.
"MR. PATTON: Now you have heard my —
 "BY THE COURT: You have the right to do the same thing.
 "MR. PATTON: I want to object to it again, if it please the Court, as being irrelevant and immaterial, it has no bearing on any issues in the case and is an attempt to impeach on an immaterial point.
 "BY THE COURT: I sustain the objection, but he wants to make a showing of proof. Go ahead."
Appellant's counsel then read into the record several statements made by the witness at the preliminary hearing in which Davis stated he had never seen Sam Tompkins take a drink.
We hold the trial court was correct in refusing to allow the appellant to impeach the witness on an immaterial issue created by appellant on cross-examination. Denson v. State, 50 Ala. App. 409, 279 So.2d 580 (1973). It is apparent from appellant's objection and offer of proof that the thrust of his effort was directed toward Will Davis' testimony as to Sam Tompkins' prior drinking habits. Whether or not Tompkins, the owner of the house where the shooting occurred, who did not witness the shooting, had ever taken a drink before was not material to the facts of the case being tried. It was not proper for defense counsel to draw out immaterial testimony on cross-examination with the avowed purpose of laying a predicate to introduce prior statements to impeach the witness on the immaterial issue. Williams v. State, 383 So.2d 547 (Ala.Cr.App. 1979),aff'd, 383 So.2d 564 (Ala. 1980), cert. denied, 449 U.S. 995,101 S.Ct. 534, 66 L.Ed.2d 293 (1980); C. Gamble, McElroy'sAlabama Evidence, § 156.01 (5) and (7) (3rd ed. 1977).
No error harmful to the substantial rights of appellant having been demonstrated on appeal, the judgment of conviction by *Page 1361 
the Colbert Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.