Willis Pennington was charged in a three-count indictment with third degree burglary, second degree theft, and second degree receiving stolen property. The charges arose out of the June 14, 1981, break-in of Smith's Grocery Store located in Tuscaloosa County. Trial was had with the jury returning a verdict of "guilty as charged." Appellant was sentenced to two years' imprisonment. From that conviction he now appeals.
On appeal, appellant questions the sufficiency of the State's corroborating evidence. Thus, a complete statement of the facts is necessary.
Mr. W.D. Smith testified that he owned Smith Grocery Store located on Highway 43 in Tuscaloosa. Around 6 p.m. on Saturday, June 13, 1981, Smith closed and locked his store for the evening. He returned the next morning between 7:30 and 8 a.m. to find a front window broken and the back door unlocked and open. He called the police and Tuscaloosa Sheriff's investigator Hubert Hallman responded. An inventory of the items taken was made. Several cartons of cigarettes and chewing tobacco, numerous bags of popcorn, and several gallons of milk were taken. The aggregate value of the items taken was between $300 and $350.
Tuscaloosa Sheriff's investigator Hubert Hallman testified that he investigated the break-in of the Smith Grocery Store. He interviewed Smith and afterwards began to look for a small, early model white vehicle with a black fender, or vice-versa color. Later that afternoon a white Ford Falcon with a black left front fender was located at the residence of co-defendant Johnny Shelby. After receiving the information, Hallman headed toward the residence only to see Shelby's brother, Mike Shelby, riding a bicycle on Highway 43. He stopped him, advised him of his rights, and questioned him. Afterwards, Hallman proceeded to the residence of appellant's father in Fayette County. Finding no one home, he returned to Tuscaloosa County and spotted the car. He stopped it and found appellant and Johnny Shelby inside. Both were advised of their rights. Subsequent thereto, Hallman went to Shelby's residence and discovered about forty-five bags of popcorn and two gallons of milk.
From the Shelby residence, Hallman returned to the residence of appellant's father. At the time, Mr. Pennington was living with his mother although he owned a vacant home nearby. Hallman informed Mr. Pennington of the possibility that stolen *Page 847 
property was hidden in his vacant house. They went to his house and searched it. Inside a washer and dryer, Hallman found about forty cartons of cigarettes and two cartons of chewing tobacco. Hallman returned all of the stolen merchandise with the exception of one bag of popcorn and four cartons of cigarettes to Smith.
Based on his investigation, appellant and Johnny and Mike Shelby were arrested.
On cross-examination, Hallman stated that none of the cartons of cigarettes and chewing tobacco were found in the furniture stacked near the front entrance of Mr. Pennington's house.
Johnny Shelby testified that appellant was his brother-in-law. He knew where appellant's father was living and where his vacant house was located. He also knew where Smith's Grocery Store was located.
Around 7 p.m. on June 13, Shelby, and his brother Mike helped appellant move some furniture to his father's house. Also helping them were Cecil Taylor and his son. Shelby stated that the house was unlocked. Sometime between 10 and 11 p.m. they finished moving the furniture and left.
Shortly thereafter, appellant and Shelby met Mike, who had ridden with Taylor, at Fuller's Grocery Store, which was located about one mile from Smith's store. Parked at the store was the Ford Falcon which belonged to appellant. Shelby testified that he and appellant discussed going to Smith's store. He stated that appellant said that "he wanted to go into the store" (R. 37), although he did not say what he wanted to do once he got inside.
Appellant drove to Smith's store and Johnny Shelby got out. He broke a front window, entered the store, took numerous cartons of cigarettes and bags of popcorn, several boxes of chewing tobacco, and a few gallons of milk. He placed the items in a box, opened the back door and left. He walked to a dirt road behind the store and waited for appellant and his brother. Shortly thereafter, he was picked up by them and taken to Fuller's Grocery Store where he got in the Falcon and returned to the dirt road to pick up the stolen merchandise that he had left. Afterwards, he drove to a predetermined location and met appellant and his brother. Appellant placed the stolen goods in the trunk of the car. Then they drove to the vacant house of Mr. Pennington. Upon arriving, Shelby backed the car up to the front door and appellant and Mike Shelby removed the cigarettes and chewing tobacco. Shelby stated that it was early Sunday morning about two hours before dawn when they left.
After hiding the cigarettes and chewing tobacco, the trio drove to Shelby's residence where they unloaded the remainder of the stolen merchandise. Appellant then left and Shelby went to sleep.
Later that Sunday morning, appellant returned to Shelby's and they went for a ride in the Falcon. Eventually, they were stopped by Investigator Hallman and later arrested.
The record reflects that appellant had been residing with the Shelbys for some time prior to the commission of the instant offense.
Shelby stated that the charges against him for the instant offense were pending. He stated that the district attorney had not discussed settling them. In addition, Shelby had two unrelated charges pending against him.
Clyde Pennington testified that he was the father of appellant. In June, 1981, he was living with his mother at her house although he owned a home nearby. Sometime prior to June 13, Pennington had given appellant permission to move some furniture into his house. He stated that the house was normally locked and he did not tell appellant how to get in. Pennington stated that on June 14, he and Investigator Hallman went to his house. He opened the door and together they searched it. Pennington stated that Hallman found the stolen cigarettes and chewing tobacco in the washer and dryer. He testified that the washer and dryer belonged to his "oldest son" and had been in his house for about four years. Pennington had not given *Page 848 
anyone permission to put the stolen merchandise in his house or in the washer and dryer.
In response to the question concerning the reason for appellant moving the furniture into the house, Pennington replied, "He [appellant] had rented a house down there and it was occupied by another fellow and up there where he lived they had cut the gas or something or other off and he wanted to move his stuff down there until this other house got empty." (R. 84) Mr. Pennington's testimony concluded presentation of the State's case.
 I
Appellant contends that the trial court erred in denying his motion to exclude the State's evidence. He argues that no evidence corroborating the testimony of accomplice Johnny Shelby was offered.
The general rules governing the determination of the sufficiency of corroborative evidence were recently stated by this court in Harris v. State, [Ms. 3 Div. 503, Aug. 24, 1982]420 So.2d 812 (Ala.Cr.App. 1982). These rules need not be restated here.
Both the State and appellant admitted that Johnny Shelby was appellant's accomplice. Shelby freely admitted his complicity and voluntarily testified to his participation in the crime. Thus, the question of whether Shelby was an accomplice was not one of disputed fact. Harris, supra.
While speculation and suspicion will not support a conviction based on the uncorroborated testimony of an accomplice, the weakness of the corroborating evidence, in and of itself does not preclude a finding that such evidence tends to connect the defendant with the commission of the offense. Where such a finding is made, the weakness and inconclusiveness, vel non of the corroborating evidence is determined by the jury. Thompsonv. State, 374 So.2d 388, 390 (Ala. 1979).
A careful review of the evidence reveals the following corroborative evidence tending to connect appellant with the crime: (1) Sometime prior to the commission of the crime, Mr. Pennington had given appellant permission to store some furniture in his vacant home; (2) Mr. Pennington had not given appellant a key to the house which was usually locked; (3) Hallman observed the furniture stored in Mr. Pennington's house; (4) Hallman discovered some of the stolen merchandise in the house; (5) Hallman discovered some of the stolen merchandise at Shelby's residence, and (6) Smith identified the merchandise returned to him by Hallman.
Taken together, we find that the above facts are sufficient corroborative evidence to properly connect appellant with the crime. Ala. Code § 12-21-222 (1975). The trial court properly submitted the evidence to the jury for its consideration. Thus, no error was committed in denying appellant's motion to exclude.
 II
Appellant made objection to the trial court's omission to charge on the formula to be applied in determining whether sufficient corroboration of Shelby's testimony existed. Also, he submitted several written requested charges on such, which were refused. Appellant properly objected to their refusal by way of a timely and specific objection. Allen v. State,414 So.2d 989 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982);Chambers v. State, 418 So.2d 948 (Ala.Cr.App. 1982); Rowe v.State, 421 So.2d 1352 (Ala.Cr.App. 1982); Grace v. State, [Ms. 1 Div. 355, June 29, 1982] (Ala.Crim.App. 1982); A.R.Crim.P.Temp. 14.
Charges 7, 9 and 10 were properly refused as they each contained a misspelled word. Malone v. State, 421 So.2d 1357
(Ala.Cr.App. 1982); Gullatt v. State, 409 So.2d 466
(Ala.Cr.App. 1981); Kuhlow v. State, 397 So.2d 165 (Ala.Cr.App. 1980), cert. denied, 397 So.2d 169 (Ala. 1981).
Charge 8 was properly refused as it was abstract. Rogers v.State, 417 So.2d 241 (Ala.Cr.App. 1982); See also, Malone, supra; Gullatt, supra. *Page 849 
 III
Appellant raises several issues concerning the trial court's denial of his motion for a new trial. All of the issues are based upon appellant's newly discovered evidence relating to the testimony of Johnny Shelby.
Attached to appellant's motion was a transcript of a conversation between his counsel and Shelby. The conversation occurred on December 22, 1981, at the office of appellant's trial counsel. Appellant filed his motion on January 22, 1982, and on February 23, 1982, a hearing was held to consider the grounds stated for granting it. The motion with the attached transcription appears in the record. However, the tape recording is not a part of the record.
At the outset, we note that the trial court's refusal to receive the tape recording into evidence did not constitute reversible error when the transcription thereof was made a part of the motion and thus before the trial court. The tape recording would have been cumulative of that which was already before the trial court. Consequently, to refuse to admit it into evidence was not error.
At the hearing on his motion, appellant called Shelby as a witness. Shelby was represented by counsel and when propounded questions, which were preliminary in nature, he refused to answer and invoked his Fifth Amendment right against self-incrimination. The trial court previously had made it clear that if Shelby testified differently than that to which he had testified at trial, then he would see that perjury charges were brought against him. In addition, the trial court would not compel Shelby to testify or answer appellant's questions.
The transcript of Shelby's conversation with appellant's counsel indicates a recantation of Shelby's trial testimony. It does not implicate appellant in the instant offense whatsoever. Rather, Shelby placed sole guilt for the crime upon himself.
Appellant argues that Shelby, by having testified at trial, waived the right to invoke his Fifth Amendment privilege against self-incrimination at the hearing on his motion for a new trial. In essence, although not specifically alleged, appellant asserts that Shelby testified falsely at trial and the conversation with his attorney reflects the true account of the facts surrounding the instant incident. Consequently, from that it follows that if the substance of the conversation had been admitted into evidence at the hearing on his motion, then Shelby would have committed perjury at the trial. There is no doubt that such a charge would manifest itself through a new proceeding not related to the material facts giving rise to the instant offense.
The privilege of a witness to refuse to incriminate himself by answering pertinent questions is personal to the witness, and cannot be claimed by or against whom he is called to testify.Bailey v. State, 398 So.2d 406 (Ala.Cr.App. 1981). Individuals who testify in either civil or criminal proceedings have the right to refuse to answer relevant questions where the answers might tend to incriminate them in future proceedings. Lefkowitzv. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973);McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158
(1924); Vail v. Vail, 360 So.2d 985 (Ala.Civ.App. 1977), rev'd,360 So.2d 992 (Ala. 1978).
The Fifth Amendment insures that a person can not be compelled, when acting as a witness, a party to a civil action, or a defendant in a criminal proceeding, to give testimony which might tend to show that he himself had committed a crime. Consequently, in any of these contexts, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. Without such protection, if the witness is nevertheless compelled to answer, said answers are inadmissible against him in a later criminal prosecution. Lefkowitz,414 U.S. at 77-78, 94 S.Ct. at 322-23.
In the instant case, no promise of immunity was granted to Shelby, which is generally done. See Odiorne v. State, 249 Ala. 375, *Page 850 31 So.2d 132 (1947). In fact, charges arising out of the instant incident were brought against Shelby and were in existence at the time he testified at appellant's trial. He had also been charged in two unrelated incidents. Furthermore, the trial court made it clear that charges for perjury would be brought against Shelby if he testified falsely at the trial.
In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege andprove (1) that the testimony was perjured; (2) that it was on a matter of such importance that the truth would have prevented a conviction; (3) that the State had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Summers v.State, 366 So.2d 336, 343 (Ala.Cr.App. 1978); cert. denied,366 So.2d 346 (Ala. 1979). This is in addition to meeting the requirements for establishing the right to a new trial on the basis of newly discovered evidence. Barnes v. State,415 So.2d 1217 (Ala.Cr.App. 1982).
In discussing the principles involved when a witness invokes his privilege against self-incrimination, our Supreme Court inInternational Brotherhood of Teamsters, Etc., v. Hatas, 287 Ala. 344,361, 252 So.2d 7, 22 (1971), quoted with approval from Ex Parte Blakey 240 Ala. 517, 522, 199 So. 857, 861 as follows:
 "It seems to be the universal holding of the courts of last resort, which have had occasion to deal with cases like the one here under consideration, that when a witness declines to answer a question propounded to him by a court of competent jurisdiction, upon the ground that his answer might tend to incriminate him, two principles of law become at once involved, in determining the question of immunity claimed by the witness, and the court must give them both reasonable construction, so as to preserve them both to a reasonable extent. These two principles are: The state is entitled to the testimony of every citizen, while the citizen is privileged not to accuse himself. Neither of these principles can be entirely ignored and disregarded.
 "It seems to be equally well settled, that in such cases, when a witness declines to answer a question upon the ground that his answer may tend to incriminate himself, it is in the first instance the prerogative of the court to consider and decide whether any direct answer to the question can implicate the witness. If it is not apparent such would be the tendency of the answer, the witness is not privileged from testifying. (Emphasis supplied)."
Conversely, if it is apparent that such would be the tendency, as in the instant case through a review of Shelby's trial testimony and his transcribed conversation with appellant's counsel, the witness is privileged from testifying.
It is well established that the granting of a new trial on the grounds of newly discovered evidence which tends to establish that the crime was actually committed by another rests in the sound discretion of the trial court. Robinson v. State,389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala. 1980). In reviewing such, this court will indulge every presumption in favor of the correctness of the trial court's ruling. Watson v.State, 398 So.2d 320 (Ala.Cr.App. 1980), cert. denied,398 So.2d 332 (Ala. 1981); Hewitt v. State, 389 So.2d 157 (Ala.Cr.App. 1980).
After a careful review of the record, we are of the opinion that the trial court committed no error in denying appellant's motion for a new trial. It is clear that the trial court recognized the potential violation of Shelby's Fifth Amendment right and, consequently, did not compel him to testify.Lefkowitz, supra. Furthermore, although the trial court did not admit the transcribed conversation into evidence, it is abundantly clear that it was thoroughly and carefully considered.
We have reviewed appellant's contentions on appeal and find no error. Thus, this cause is hereby affirmed.
AFFIRMED.
All the Judges concur; BOWEN, J., in result only. *Page 851