James Henry Jackson, alias Roland Jackson, was charged with the third degree burglary of Southern Filters, Inc., pursuant to § 13A-7-7, Code of Alabama 1975 as amended.
The jury found the appellant "guilty of third degree burglary" as charged and following a sentencing hearing at which three prior felonies, two burglaries and the third for robbery, were placed in evidence, appellant having been represented by counsel at each of these, the trial court then sentenced the appellant to 15 years' imprisonment under the Alabama Habitual Felony Offender Act.
Since there is no real dispute as to the essential facts of the case, only a succinct statement is herein set out.
Mr. James Judd testified that he was Chairman of the Board of Southern Filters, Inc., a company engaged in making air filter systems, with offices located at 314 Third Avenue, North, Birmingham, Alabama, on August 23, 1980. The business was incorporated and he gave the corporate identity and described the interior of the building, which was equipped with a silent burglar alarm system and had a loft area in which certain parts were stored. He stated that he had received a call about 8:40 on the evening of August 23, 1980, to go by the plant and he saw two Birmingham police officers there. He stated that he had not given James Henry Jackson or Roland Jackson permission to enter his place of business.
William Tate testified that he was plant manager of Southern Filters, Inc., located at 314 Third Avenue North, Birmingham, on August 23, 1980. He described the operations of the business and testified that he had locked the business on the late afternoon of August 23, 1980, and had not given *Page 1183 
the appellant permission to enter. On the following day he entered the plant about 7 a.m., and upon examination found no missing parts or equipment, but described an opening about eight feet off the ground where a panel had been knocked out and an apparent entry made into the building. He stated that he did not know the appellant.
Birmingham Canine Police Officer Ronald C. Hull testified he answered the call to go to 314 Third Avenue, North in Birmingham at approximately 8:30 on the evening of August 23, 1980. He arrived about the time another police car containing Officer McBrayer came there.
Officer Hull stated that the man responsible for handling the silent alarm system was there standing outside and that he unlocked the building and turned off the alarm and remained with Officer McBrayer. Officer Hull and his police dog then went inside and Officer Hull unleashed the dog and told him to search the building. The dog walked throughout the ground floor and did not find anyone and then started up some stairs toward a loft where an area was enclosed in wire. Officer Hull stated that he could see a pair of human legs from the knees down and heard the dog growl and stop by the door of the caged area. Officer Hull then entered and directed the appellant to come out and marched him down the stairs. At the bottom of the stairs, the appellant picked up a 2 X 4 and attempted to swing at the dog and at this point the dog bit him. Officer Hull then restrained the dog and placed him back on the leash. Officer Hull marched the appellant outside and turned him over to Officer McBrayer who then gave appellant a Miranda warning. Appellant was then taken by Cooper Green Hospital and then to police headquarters were he was arrested and charged with burglary.
Officer McBrayer confirmed Officer Hull's testimony. Both of the officers testified that in their opinion the appellant was not intoxicated, did not stagger and that they did not detect the odor of alcohol on his breath, nor did the appellant appear to be under the influence of any medication or drugs.
The appellant made a motion to exclude the State's evidence on the basis that there was no evidence establishing "any intent to commit a crime."
The appellant presented the testimony of his wife, Mondria Jackson, who testified they lived in an apartment approximately ten blocks from his mother's home and about two and one-half blocks away from the warehouse of Southern Filters, Inc. She testified that on August 22 and 23 she and her husband had been drinking heavily and that the appellant had left because of an argument and that he was "staggering drunk".
Appellant's mother, Rebecca Jackson, testified that the appellant had had two injuries, one in 1980 which required surgery on his arm, and a second the next year which required surgery to his knee, and that he had been on prescription medication since then. She testified that in August, 1980, he was taking medication and had come by her home on the afternoon of August 22, and was "pretty high", though she did not see him take anything to drink.
Rebecca Jackson, appellant's sister, testified that she had seen appellant on the afternoon of August 23, 1980, and that he had been drinking a lot and "staggering".
Appellant's medical records from Cooper Green Hospital were placed in evidence.
There was no exception to the oral charge of the court, nor were there any refused written charges.
 I
Appellant's counsel argues that the trial court erred in permitting the two Birmingham police officers, Hull and McBrayer, to testify as to the appellant's condition the night of his arrest at Southern Filters, Inc., by giving their opinion as to whether or not the appellant was under the influence of any alcohol or drugs. In Jolly v. State,395 So.2d 1135 (Ala.Cr.App. 1981), Judge Bowen observed: *Page 1184 
 "Intoxication is a matter of common observation which requires no peculiar scientific knowledge. 31 Am.Jur.2d Expert and Opinion Evidence, Section 101 (1967). The general principles controlling opinion testimony on intoxication are stated in 23 C.J.S. Criminal Law § 866 (1961).
 `It has been broadly declared, or the principle has been broadly applied, that any witness may express his opinion as to intoxication, that opinion testimony as to intoxication is not limited to expert testimony, and may be given by law witnesses, and that intoxication or sobriety need not be proved by expert testimony, since it does not require any particular or special knowledge. The witness must have had a suitable opportunity, even though slight, for observation; the conditions under which the witness observed the person in question, and the opportunity to observe him, go to the weight, and not to the admissibility, of the testimony. It has been required that evidence be admitted showing that any witness who is asked to express an opinion as to accused's intoxication is properly qualified.'
 "See also Gladden v. State, 36 Ala. App. 197, 54 So.2d 607, cert. denied, 256 Ala. 368, 54 So.2d 610 (1951).
 "Whether or not the qualification of a witness to state his opinion is sufficiently established is a matter resting largely in the trial court's discretion. Its ruling thereon ordinarily will not be disturbed on appeal unless there is a clear showing of abuse. Koziwski [Kozlowski] v. State, 248 Ala. 304, 27 So.2d 818 (1946). In determining competency, the trial judge is not bound by any hard and fast rule. Redwine v. State, 36 Ala. App. 560, 61 So.2d 715, cert. denied, 258 Ala. 196, 61 So.2d 724
(1953)."
Under the foregoing authorities, both Officer Hull and Officer McBrayer were competent to testify that the appellant did not appear to be intoxicated or under the influence of drugs at the time of his arrest.
 IIa
The appellant challenges the Alabama Habitual Felony Offender law, stating such to be unconstitutional and a violation of equal protection of law, in that its provisions constitute a "Bill of Attainder" because of applying punishment for offenses committed at a prior time, without a hearing.
It must be first noted that the appellant was given notice by the State of its intention to proceed in this cause under the Alabama Habitual Felony Offender Statute and the trial court conducted a full hearing, following trial, before sentence was imposed in this cause. (R. 114-121).
The State presented three prior felony convictions; the first for a burglary at which the appellant was represented by counsel and received a sentence of one year and a day because he was a minor at the time. The second offense occurred on January 29, 1971, the appellant being represented by counsel and pled guilty of burglary and received a sentence of two years. The appellant's third conviction was for the offense of robbery for which he received a sentence of 10 years on January 3, 1977, having been represented by counsel. After going over these three convictions with the appellant and his counsel, the trial judge explained that the minimum sentence under the Alabama Habitual Offender law was 15 years and that he was going to impose this sentence in the case at bar because of the prior record of this appellant.
This court has upheld the constitutionality of the Alabama Habitual Offender Statute a number of times beginning withWatson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1980). In Watson this court dealt with the issue of the proportionate severity of the sentence there imposed and affirmed under authority of Rummel v.Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
Similarly, this court has determined that the invoking of prior offenses to enhance punishment is not unconstitutional and in violation of due process provided *Page 1185 
that each of the prior offenses affirmatively establishes that the appellant was represented by counsel, as in the case at bar. Thatch v. State, 397 So.2d 246 (Ala.Cr.App. 1981), cert. denied 397 So.2d 253 (Ala. 1981). In these cases and in several subsequent opinions this court has determined that the sentencing procedure here followed under the Alabama Habitual Offender Act did not constitute cruel and unusual punishment by retroactively imposing additional punishment for offenses previously committed. Seritt v. State, 401 So.2d 248
(Ala.Cr.App. 1981), cert. denied, 401 So.2d 251 (Ala. 1981);Smith v. State, 401 So.2d 251 (Ala.Cr.App. 1981), cert. denied,401 So.2d 257 (Ala. 1981); Bates v. State, 405 So.2d 1334
(Ala.Cr.App. 1981), cert. denied, 405 So.2d 1339 (Ala. 1981).
 IIb
Since the briefs were filed in this cause, the Supreme Court of the United States has rendered its decision in Solem, Wardenv. Helm, (1983), ___ U.S. ___, 103 S.Ct. 3001, 77 L.Ed.2d 637.
As required by Solem, we have considered the proportionality of the punishment herein imposed, both in light of the appellant's prior record and the length of sentence for the offense for which the appellant has been duly convicted. We find that the minimum sentence herein imposed of 15 years to be in keeping with the applicable Alabama statute and procedure therein set forth and in no way to offend the pronouncements of the United States Supreme Court in Solem, supra.
 III
The State of Alabama properly presented a prima facie case as required by law. The jury found the appellant guilty as charged and we find no error in this record.
For the reasons herein stated, this judgment is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.