James McConico, Jr. was charged with the murder of one Ricky Morton, by shooting him with a pistol, in violation of §13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of murder" and following a sentencing hearing, the trial court fixed punishment at life imprisonment pursuant to the Alabama Habitual Felony Offender Act.
Sharon Mitchell testified that on May 23, 1983, at approximately 8:30 a.m., the appellant came to the residence of his estranged wife, Brenda McConico. She stated that Mrs. McConico was living in the home with *Page 745 
her brother, Ricky Morton, and Mitchell. She said that, when the appellant entered the home, he and Brenda entered into an argument. She stated that Brenda ran into the kitchen of the home and that appellant followed her. She stated that the appellant was pulling on Brenda and arguing with her when Ricky Morton came out of his bedroom and went into the kitchen. She stated that Ricky told the appellant to take Brenda into her room and talk to her, and at this time the appellant released his wife and she ran out the front door. She further stated that Ricky and the appellant began a struggle which ended shortly thereafter.
Miss Mitchell testified that the appellant then took his son, Johnathon, outside and placed him in his car. She said she saw the appellant get a gun from near the driver's seat of his automobile and come back to the house with a gun in his hand. She stated that the appellant re-entered the home and went into the dining room. She stated that he grabbed Ricky around the throat with his left hand, while holding the pistol in his right hand and then pushed Ricky up against the wall. She stated that the appellant told Ricky that he was tired of him messing in his business, and then shot Ricky. She further stated that at no time during this altercation between the appellant and Ricky Morton did she see Ricky in possession of a knife. She also stated that she called the police and an ambulance.
On cross-examination, Miss Mitchell was subjected to a vigorous interrogation about the fact that she had testified at a preliminary hearing that Ricky Morton had a knife in his hand during the altercation. She stated that Brenda, the wife of the appellant, had told her to say that Ricky had a knife during the fight, but the truth was that Ricky did not have a knife. She further stated that she felt threatened by the appellant, which was another reason she had changed her testimony during the preliminary hearing.
Brenda McConico also testified to the facts surrounding the incident on May 23, 1983. Her testimony was basically the same as Sharon Mitchell's except for the fact that she did not witness the actual shooting. She did state that she never saw Ricky Morton with a knife during the altercation.
Howard Miller testified that he was employed by the Birmingham Police Department and, as a part of his duties as an officer, helped investigate the shooting of Ricky Morton. He testified that at no time during his investigation of the incident was it mentioned that Ricky Morton had a knife during the fight. He further stated that a knife was not recovered at the scene of the shooting.
Phillip Johnson testified that he was employed as a Birmingham Police Officer. He stated that he was one of the first officers to arrive at the scene and discover the body of Ricky Morton lying in the dining room on the floor. He stated that Ricky Morton had been shot in the mouth. He further stated that a knife was not found at the scene of the shooting.
Jerome Tift testified that he was the Associate Coroner Medical Examiner for Jefferson County. He stated that in his capacity as such a medical examiner he performed an autopsy on the victim, Ricky Morton. He stated that the cause of death was a gunshot wound to the head of Ricky Morton.
The defendant called a number of witnesses, and all of these witnesses testified that the victim had a bad reputation for violence in the community. These witnesses testified to past specific bad acts of the victim with regard to violence.
The appellant, James McConico, Jr., testified in his own behalf and offered a slightly different version of the incident on May 23, 1983. He stated that he went to the residence of his wife on the morning in question to pick up his son and take him to school. He stated that when he arrived he entered the home and started arguing with his wife, Brenda, about her obtaining employment. He stated that she was very upset and that she was leaning against him in the kitchen and crying. He stated that at this time Ricky Morton came into the *Page 746 
kitchen and grabbed him around the waist. He stated that they wrestled for a moment and at this time Brenda ran out of the house. He said he jumped up and ran outside after her, but he did not see her. He stated that he ran down the street to a neighbor's house and asked the neighbor if she had seen Brenda, to which the neighbor replied that she had not. He said that he ran back to his wife's residence and re-entered the home. He said that when he went back into the house, Ricky Morton was standing in the dining room and that Ricky was cursing at him, telling him to get out of the house. He said he walked towards Ricky and Ricky turned on him with a knife. He further stated that he grabbed Ricky's arm, then reached into his own pocket and pulled out a gun. He said they started struggling. He stated, "I guess maybe I was a little stronger than he was, and I pushed him to the wall. . . . The gun went off, and we were locked like that." (R. 123) He stated that he placed Ricky on the floor, picked up his two children, and took them outside and placed them in his car. He stated that he went back into the house and reported the incident to the telephone operator. He said that he then left.
 I
The appellant contends that he was convicted on the perjured testimony of one of the State's witnesses and, as a result, should obtain a new trial. Specifically, he argues that Sharon Mitchell, who witnessed the appellant's shooting of Ricky Morton, committed perjury.
In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege andprove (1) that the testimony was perjured; (2) that it was on a matter of such importance that the truth would have prevented a conviction; (3) that the State had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Summers v.State, 366 So.2d 336 (Ala.Crim.App. 1978), cert. denied,366 So.2d 346 (Ala. 1979); Pennington v. State, 420 So.2d 845
(Ala.Crim.App. 1982); Phelps v. State, 439 So.2d 727
(Ala.Crim.App. 1983); Waldrop v. State, 448 So.2d 490
(Ala.Crim.App. 1984). This is in addition to meeting the requirements for establishing the right to a new trial on the basis of newly discovered evidence. Barnes v. State,415 So.2d 1217 (Ala.Crim.App. 1982).
In the present case, the appellant has failed to satisfy this burden of proof. The record reveals that Miss Mitchell told conflicting stories about the victim having a knife during the incident, during the preliminary hearing and at trial in this case. She stated on direct examination of the preliminary that he did not have a knife, then on cross-examination, she stated that he did. During trial of this case, she stated that he did not have a knife. The defense counsel effectively and vigorously impeached this testimony by use of her prior testimony at the preliminary hearing. The evidence was properly put before the jury, which had the "responsibility of assessing the credibility of each witness and weighing all the evidence, whether direct or circumstantial, as they viewed it." Cumbo v.State, 368 So.2d 871 (Ala.Crim.App.), cert. denied,368 So.2d 877 (1978). The jury could have chosen to disregard Miss Mitchell's testimony entirely. Moreover, we have carefully reviewed the evidence in this cause and have concluded that, while the appellant presented a defense which, if believed by the jury, might have justified his conduct, there was sufficient evidence to support the jury's verdict.
 II
The appellant contends that his constitutional right to compulsory process was violated when the trial court failed to continue his trial because a defense witness failed to appear.
In deciding whether the trial court should have granted a continuance in order to procure the attendance of an absent defense witness, it should be noted initially that defense counsel did not ask for such a *Page 747 
continuance in any form. Further, a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973);Wilson v. State, 384 So.2d 1243 (Ala.Crim.App. 1980); Bailey v.State, 398 So.2d 406 (Ala.Crim.App. 1981); King v. State,435 So.2d 769 (Ala.Crim.App. 1983); Pritchett v. State,445 So.2d 984 (Ala.Crim.App. 1984). This rule clearly applies to cases where the continuance is sought due to an absent witness.Bailey v. State, supra; Weaver v. State, 401 So.2d 344
(Ala.Crim.App. 1981); Pritchett v. State, supra.
The Court of Appeals has previously stated:
 "Before it can be said that the accused has been denied this constitutional right, he must apply to the court for the issuance of an attachment and show to the court that the witness has been served with a subpoena a sufficient length of time before the trial to afford an opportunity to the witness to obey its mandate, that the witness is in the jurisdiction of the court, and that his attendance can be obtained within a reasonable time by compulsory process. . . ."
Thomas v. State, 15 Ala. App. 408, 73 So. 558 (1916); King v.State, supra; Pritchett v. State, supra.
In this case, defense counsel called a number of witnesses. When he learned that one witness was not present, he continued with the trial and called other witnesses. After these witnesses testified he again called for this absent witness, and when he did not appear, counsel announced that the defense rested. Appellant did not ask for a continuance in order to secure the presence of the witness, nor did he invoke a ruling on the part of the trial court. We cannot hold that the trial court was in error for not continuing the case under these circumstances. See Thomas v. State, 231 Ala. 606, 165 So. 833
(1936); Dickerson v. State, 362 So.2d 1322 (Ala.Crim.App. 1978).
 III
The appellant filed a pro se petition for writ of error coram nobis asserting, among other things, that his counsel had not adequately represented him by failing to file pre-trial motions, to locate and interview witnesses who would have supported his theory of defense, to subpoena a "material witness," and to impeach Brenda McConico's testimony.
Following a hearing on the merits of the appellant's allegations, at which he was represented by counsel, the trial court denied the petition with reference each allegation. The able trial judge found that the appellant was thoroughly and competently represented at his trial. This finding is fully borne out by the record in this cause.
Not only has the appellant failed to establish that the conduct of his counsel had reduced the trial proceeding to a farce, sham or mockery, Robinson v. State, 361 So.2d 1172
(Ala.Crim.App. 1978), but he has also fallen far short of establishing that he was denied "reasonably effective" assistance of counsel as set forth in Harris v. Oliver,645 F.2d 327 (5th Cir. 1981). See also, Mitchum v. State,414 So.2d 168 (Ala.Crim.App. 1982); Trammell v. State, 420 So.2d 855
(Ala.Crim.App. 1982); Phelps v. State, 439 So.2d 727
(Ala.Crim.App. 1983). We, therefore, hold that this appellant has substantially failed to meet the burden of truth as required in attempting to sustain the allegations made at the coram nobis proceeding. Cannon v. State, 416 So.2d 1097
(Ala.Crim.App. 1982).
 IV
The appellant alleges that he was indicted and convicted by way of a void indictment. He argues that the witnesses which testified before the Grand Jury could not have given competent evidence sufficient for a return of a true bill.
The question of whether an indictment by the Grand Jury has been found on insufficient testimony must be raised by a proper motion to quash the indictment. Perkins v. State, 66 Ala. 456
(1880); *Page 748 Franklin v. State, 233 Ala. 203, 171 So. 245 (1937). Further, such motions should be timely filed at the trial level and can not be raised for the first time on appeal. Wright v. State,421 So.2d 1324 (Ala.Crim.App. 1982); Wesley v. State,424 So.2d 648 (Ala.Crim.App. 1982); Sanders v. State, 426 So.2d 497
(Ala.Crim.App. 1982). Moreover, the testimony of a single witness before the grand jury is sufficient to comply with §12-16-200, Code of Alabama 1975. Douglas v. State, 42 Ala. App. 314, 163 So.2d 477 (1963), cert. denied, 276 Ala. 703,163 So.2d 496 (1964), reversed on other grounds, 380 U.S. 415,85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). When it appears that witnesses were examined by the grand jury, or the jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged. Evans v. State,338 So.2d 1033 (Ala.Crim.App. 1976), cert. denied, 348 So.2d 784
(Ala. 1977); Wright v. State, supra.
A review of the record in this cause reveals that the appellant never filed a motion to quash the indictment, nor did he raise these grounds at the trial level. Therefore, pursuant to the authority above, this court has nothing before it to review.
 V
The appellant contends that the trial court erred in denying his motion to inspect the minutes of the grand jury.
This court in Sullivan v. State, 43 Ala. App. 302,189 So.2d 593 (1966), held that the trial court, in its discretion, may allow counsel to look at grand jury notes or minutes. Nowhere is it shown that the district attorney was examining any of the witnesses from the grand jury notes or grand jury testimony. See Hammond v. State, 354 So.2d 280 (Ala.Crim.App.), cert. quashed, 354 So.2d 294 (Ala. 1977); Stroud v. State,56 Ala. App. 692, 325 So.2d 200 (1975), cert. quashed, 295 Ala. 424, 325 So.2d 204 (1976); Allen v. State, 380 So.2d 313
(Ala.Crim.App. 1979), cert. denied, 380 So.2d 341 (Ala. 1980);Brager v. State, 380 So.2d 401 (Ala.Crim.App. 1980). The appellant must show a justifiable need to have the grand jury minutes revealed to him and in this case he did not show such a need. Under these circumstances, it was proper to deny the appellant's request to see the grand jury testimony. Thigpen v.State, 49 Ala. App. 233, 270 So.2d 666 (1972); State ex rel.Baxley v. Archer, 335 So.2d 240 (Ala.Crim.App. 1976); Craig v.State, 380 So.2d 385 (Ala.Crim.App. 1980); Millican v. State,423 So.2d 268 (Ala.Crim.App. 1982); Dutton v. State,434 So.2d 853 (Ala.Crim.App. 1983).
 VI
The appellant contends that the Alabama Habitual Felony Offender Act is unconstitutional as applied to him, and as such, the law constitutes cruel and unusual punishment.
The record discloses that the appellant was given due notice of the State's intention to proceed under the Act, and that a full hearing was conducted by the trial court, following trial, before sentence was imposed in this cause.
The State properly presented the appellant's prior felony convictions, which were: (1) Grand larceny, and; (2) Burglary and grand larceny.
This court has upheld the constitutionality of the Alabama Habitual Felony Offender Act in a plethora of cases, and continues to do so on this appeal. Watson v. State,392 So.2d 1274 (Ala.Crim.App.), cert. denied, 392 So.2d 1280 (Ala. 1980);Seritt v. State, 401 So.2d 248 (Ala.Crim.App.), cert. denied,401 So.2d 251 (Ala. 1981); Smith v. State, 401 So.2d 251
(Ala.Crim.App.), cert. denied, 401 So.2d 257 (Ala. 1981);Ingram v. State, 437 So.2d 128 (Ala.Crim.App. 1982); Weaver v.State, 437 So.2d 626 (Ala.Crim.App. 1983); Jackson v. State,440 So.2d 1181 (Ala.Crim.App. 1983); Campbell v. State,444 So.2d 913 (Ala.Crim.App. 1984); Pickens v. State, 447 So.2d 867
(Ala.Crim.App. 1984). Furthermore, this court has held that sentencing under this Act does not constitute cruel and unusual punishment, and we find no merit to appellant's contention in this cause that such *Page 749 
sentencing, as applied to him, constitutes such cruelness as to render it unconstitutional. Watson v. State, supra; Seritt v.State, supra; Smith v. State, supra; Butler v. State,439 So.2d 210 (Ala.Crim.App. 1983); Willis v. State, 441 So.2d 1030
(Ala.Crim.App. 1983); Pickens v. State, supra. See also,Rummell v. Estelle, 445 U.S. 263, 100 S.Ct. 1133,63 L.Ed.2d 382 (1980); Seritt v. Alabama, 731 F.2d 728 (11th Cir. 1984).
As required by Solem, Warden v. Helm, 463 U.S. 277,103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), we have considered the proportionality of the punishment herein expressed, both in light of the appellant's prior record and the length of the sentence for the offense for which the appellant has been convicted. We find the sentence imposed to be in keeping with the statute, and Solem furnishes no authority for disturbing such sentencing in this cause. Weaver v. State, supra; Minor v.State, 437 So.2d 651 (Ala.Crim.App. 1983); Jackson v. State, supra; Pickens v. State, supra; Seritt v. Alabama, supra.
We have carefully reviewed the record in this cause and find no errors injurious to the appellant therein. The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
 *Page 348