522 So.2d 317 (1987)
John Alvin STUBBS
v.
STATE.
7 Div. 608.
Court of Criminal Appeals of Alabama.
February 24, 1987.
Rehearing Denied April 14, 1987.
*318 G. Coke Williams of Williams, Norton & Long, Anniston, for appellant.
Charles A. Graddick, Atty. Gen. and Tommie Wilson, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
The grand jury of Calhoun County returned 54 indictments against the appellant; 23 of which charged him with the offense of possession of a forged instrument, in violation of §§ 13A-8-3 or -4 and 13A-4-3, Code of Alabama (1975). The cases which were the subject of these indictments were consolidated for trial; a jury was struck, sworn, and impanelled; whereupon, the trial court granted the appellant's motion for mistrial. The cases were again called for trial and, after a trial, the jury returned verdicts of guilty in all cases, except that the appellant was found not guilty under Count II of the indictments, which charged criminal conspiracy. The appellant was sentenced on each case of possession of a forged instrument to four years in the state penitentiary, each sentence to run concurrently, and to eight years in the state penitentiary on the cases charging the appellant with theft, each to run concurrently.
Because of the complexity of the facts of this case, only those facts which are pertinent to the issues raised will be discussed. Basically, each of the 23 indictments returned against the appellant charging him with the offense of possession of a forged instrument described a check issued by an insurance company and alleged that the defendant did with the intent to defraud, possess or utter a forged instrument, specifically the check described therein; and each indictment further alleged endorsements of various people on each check. Also, each of the 31 indictments charging the appellant with theft of property described a check and the sum of money for which the check was made, and contained an allegation that said money was the property of the insurance company, that it was payable to a named person upon the death of a named person for the face amount of the check, and that the appellant did knowingly obtain or exert unauthorized control over the check with the intent to deprive the owner of the property. The second count of each of these indictments, which charged the appellant with criminal conspiracy, claimed that the appellant did agree with Russell Williams, also known as Tombstone Williams, to commit the theft of property.

I.
The appellant argues that the trial court erred in denying his motion for new trial based on the allegation that his conviction was the result of the perjured testimony of a State's witness. The witness, Jerry Wayne McClellan, testified that he was an agent for Liberty National Life Insurance Company and that he was in a scam or plan to defraud Liberty National of money. At the conclusion of the direct examination of Jerry Wayne McClellan, the following transpired:
"A [McClellan]: He told me he had two people that cashed the checks for him.
"Q [Prosecutor]: Who were they?
"A: John Stubbs and MorrisI don't know his last name, but he owns a filling station on West 15th Street.
"Q: Are these the insurance checks you're talking about?
"A: Yes.
"Q: Is it one indictment or multiple indictments?
"A: Multiple.
"Q: Has anybody promised you anything for your testimony today?
"A: Like who?
*319 "Q: Did Mr. Carroll, Mr. Hardesty, the Attorney General or myself promise you anything?
"A: No.
"Q: Did Bob Field or anybody from the District Attorney's office promise you anything?
"A: No.
"Q: Did Chuck Winfrey promise you anything for your testimony today?
"A: No.
"Q: Have you had a trial in your cases yet?
"A: No.
"Q: Are you going to plead guilty?
"A: Yes, I probably will, because I'm guilty.
"Q: Has anybody in law enforcement, any city police officers, any law enforcement agents or people promised you anything for your testimony today?
"A: No."
Subsequently, the appellant filed a motion for new trial raising the issue of perjured testimony, based on the testimony from the same state's witness at McClellan's probation hearing. Initially, it is doubtful that this issue is adequately preserved. Although the defense counsel offered a partial transcript of the testimony from the hearing on application for probation as Defendant's Exhibit 1 and offered by "reference the entire testimony of Jerry Wayne McClellan on that occasion so that what [would be] in the record [would] be the complete testimony of Mr. McClellan on his application for probation," this testimony does not appear in the record. However, in the argument of one of the defense lawyers in the motion for mistrial, portions of McClellan's testimony from the probation hearing are quoted as follows:
"Defense counsel: ... Under oath whereby he was sworn to tell the truth before Your Honor, he [Mr. McClellan] stated, `Yes, sir, I cooperated with the State 100%. I was led to believe that if I cooperated with them, they would help me out, and I cooperated 100% with them.' ... It is not speculation, Your Honor; it's sworn testimony under oath elicited by the District Attorney's Office. `Mr. McClellan, who from the Attorney General's Office promised you a letter to go in your file that they would recommend anything?' Answer: `Him, Rebarchak.' Question: `Was that before or after you testified against Mr. Stubbs?' Answer: `Before.'"
Thereafter, the attorney who had represented McClellan at the probation hearing was called and testified that following that hearing he took an affidavit from McClellan in order to "clarify" his testimony at the probation hearing. The prosecutor also quoted from McClellan's testimony during the probation hearing, stating that "[o]n page R-3 of Defendant's Exhibit Number 1, it says, `I was not promised anything.' On line 21, it says, `I was not promised anything.'"
"A review in court cannot predicate error on matters not shown by the record. Watson v. State, 398 So.2d 320 (Ala.Cr.App.1980), cert. denied, 398 So. 2d 332 (Ala.1981). Indeed, a silent record supports a judgment. Robertson v. State, 29 Ala.App. 399, 197 So. 73 (1940). It is appellant's duty to file a correct record. Tyus v. State, 347 So.2d 1377 (Ala.Cr.App.1977), cert. denied, 347 So.2d 1384 (Ala.1977); Rushing v. State, 40 Ala.App. 361, 113 So.2d 527 (1959)." Robinson v. State, 444 So.2d 884, 885 (Ala. 1983).
However, irrespective of whether the appellant's claim was properly preserved, the appellant's argument is without merit.
"In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege and prove (1) that the testimony was perjured; (2) that it was on a matter of such importance that the truth would have prevented a conviction; (3) that the State had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Summers v. State, 366 So.2d 336 (Ala.Cr.App.1978), cert. denied, 366 So.2d 346 (Ala.1979); Pennington v. State, 420 So.2d 845 (Ala. Cr.App.1982); Phelps v. State, 439 So.2d 727 (Ala.Cr.App.1983); Waldrop v. *320 State, 448 So.2d 490 (Ala.Cr.App.1984). This is in addition to meeting requirements for establishing the right to a new trial on the basis of newly discovered evidence. Barnes v. State, 415 So.2d 1217 (Ala.Cr.App.1982)."
Baker v. State, 477 So.2d 496, 504 (Ala.Cr. App.1985). Five requirements have been enumerated to establish the right to a new trial based on newly discovered evidence. Barnes v. State, 415 So.2d 1217 (Ala.Cr. App.1982). The newly discovered evidence may not be evidence that is only cumulative or impeaching. Id. at 1219. Additionally, the newly discovered evidence must be "such as will probably change the result if a new trial is granted."
The appellant has not met his burden of proof. He has neither proved that the testimony was, in fact, perjured, nor has he proved that it was on a matter of such importance that the truth would have prevented a conviction. Although McClellan's testimony was damaging to the defendant, there was ample other evidence to support his conviction.
Dennis Allen Key, an employee of Gulf Life Insurance Company, testified that he was involved in the life insurance scam to defraud Gulf Life of money. He testified that he had spoken to the appellant several times at Williams Funeral Home and that the appellant had asked him if he had any death claims to "hand in" to Russell Williams. Key also testified that on another occasion the appellant asked him if he had "anything for Williams' Funeral Home, that Russell Williams owed him money, that he wouldn't pay him his money. He [the appellant] wanted to know if I [Key] had any policies to hand over to him so he could get his money from Russell Williams." He testified that he usually handed these checks over to the appellant, who would take the checks and endorse the back of them and presumably cash them. Key further testified that he had never had a conversation with the appellant about a legitimate policy. On re-direct examination, Key stated that he had personal knowledge that the appellant and certain others were involved in the insurance scam.
"Moreover a decision on a motion for new trial rests largely within the discretion of the trial court, and, in reviewing such decision, the appellate court will indulge every presumption in favor of the correctness thereof. Ward v. State, 440 So.2d 1227 (Ala.Cr.App.1983)." Moore v. State, 457 So.2d 981, 989 (Ala.Cr.App.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).

II.
The appellant argues that the State used its peremptory strikes to eliminate all of the black veniremen from the jury and, thus, discriminated against the appellant, who is also black. The record indicates that the appellant was granted a mistrial on these grounds and the case was, therefore, continued. Thereafter, a jury was struck and the trial court stated, "Is this the State's jury?"; to which the State responded affirmatively. Then the trial court asked, "Is this the defendant's jury?"; to which the defense counsel responded, "Yes, sir." The jury was then impanelled and sworn. The next day, the defense counsel made a motion for a mistrial on the grounds that the defendant was denied or would be denied a fair and impartial trial by a jury of his peers. Before giving its reasons for the questioned strikes, the State submitted that the objection to the jury panel came too late. We agree. "Defense counsel objected only after the jury was impannelled and sworn. `In light of Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ], the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn.' Williams v. State, 712 S.W.2d 835, 840 (Tex.App., Corpus Christi, 1986)." Swain v. State, 504 So.2d 347 (Ala.Cr.App.1986). "The Court in Batson envisioned that a motion to strike would be made promptly, probably before the venire was dismissed." United States v. Erwin, 793 F.2d 656, 667 (5th Cir.1986).

III.
The appellant argues that the trial court erred by not granting a mistrial when the *321 prosecutor commented that he chose not to call a witness who was available to testify. During the closing statement of one of the prosecutors, the following transpired:
"[Prosecutor]: A question must be on a lot of your minds, a question that [the other prosecutor] and I debated over long and hard, was why didn't the State call Tombstone Williams to testify. Tombstone Williams, ladies and gentlemen, is a twice-convicted felon
"[Defense counsel]: Your Honor we're going to object to that. We don't think the State had the right to comment on why they didn't call a witness or why anybody else didn't call a witness.
"THE COURT: Overruled.
"[Defense counsel]: We except.
"[Prosecutor]: Ladies and gentlemen, he is a twice-convicted felon. He is now facing his third felony, which he has stated he will plead guilty to, which we are just waiting on him to do as the others have done.
"[Defense counsel]: Your Honor, we are going to object to that because the [sic] Williams hasn't testified. He hasn't said he's going to plead guilty.
"THE COURT: Sustained as to what he said.
"[Prosecutor]: Ladies and gentlemen, the reason the State of Alabama did not call Russell Tombstone Williams was because we did not believe him.
"[Defense counsel]: Your Honor, we're going to again object and we move for a mistrial because it is improper for the State to comment on any witness testifying or not testifying. It's highly improper and it's meant to only influence the jury about something. We haven't had an opportunity to cross-examine him. We haven't had an opportunity to talk to him or anything.
"[Prosecutor]: He's up here testifying what the witness would have said and what he would not have said.
"Now, I hate to do it eight days into the trial, but I ask the Court to declare a mistrial.
"THE COURT: The motion is denied.
"Ladies and gentlemen, what the attorneys argue before you is not evidence and you are not to consider it as evidence. You can determine what the true facts are in this case. If you find that either attorney has argued inferences from facts that are not in evidence, then you can disregard that argument. What they say is not evidence and you are not to consider it as such in this case."
In his brief, the appellant argues that, "No unfavorable inference can be drawn, and no unfavorable argument to a jury made by counsel against a party because of the failure to call a witness to testify, when the witness is available and accessible to both parties." See Miller v. State, 431 So.2d 586 (Ala.Cr.App.1983); Livingston v. State, 419 So.2d 270 (Ala.Cr. App.1982). Although it is doubtful that this comment was intended by the prosecutor to refer to the appellant's failure to call Tombstone Williams as a witness, and it is further doubtful that the jury would have construed it as such, there is nevertheless no indication that Tombstone Williams would have testified favorably, as required by Hunt v. State, 453 So.2d 1083 (Ala.Cr. App.1984); Miller v. State, supra; Livingston v. State, supra. The general rule is that, "one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available to both sides." Hunt v. State, supra, at 1087. There is no indication made by the prosecutor that Tombstone Williams's testimony would have been favorable to the appellant. Furthermore, it is not clear that Tombstone Williams would have been a witness that was "equally available" to both parties.
"The availability of a witness to one or the other of the parties is determined initially by the party's superior knowledge of the existence and identity of the witness. Henry v. State, Ala.Cr.App., 355 So.2d 411. Additionally, the relationship between the witness and the party that would reasonably be expected to affect the witness' personal interest in the outcome of the case is another factor to consider in determining to whom is a *322 witness is available. Brown v. State, 50 Ala.App. 471, 280 So.2d 177."
McMorris v. State, 364 So.2d 392, 402 (Ala. Cr.App.1980), cert. denied, 394 So.2d 404 (Ala.1981).
The prosecutor's comment did not appear to be a reference to the defense counsel's failure to call Tombstone Williams, but rather a reference to the State's failure to call Tombstone Williams as a witness. Therefore, because the record is void of any indication that the witness would have testified favorably for the appellant, the trial court properly denied the appellant's motion for a mistrial.
AFFIRMED.
TAYLOR, and TYSON, JJ., concur.
PATTERSON, J. dissents with opinion with BOWEN, P.J. joining.
PATTERSON, Judge (dissenting).
I believe that the prosecutor's argument to the jury, giving reasons why the State had not called "Tombstone" Williams as a witness, was improper. It was not supported by any evidence and, moreover, was not relevant to any issue in the case. I also believe that the objections made by appellant to this argument at the time they were made, sufficiently preserved this issue for our review on the ground that the argument was unsupported by any evidence.
The test for reviewing improper prosecutorial argument is not whether the comments did influence the jury, but whether they might have influenced the jury in arriving at the verdict. Ex parte Ward, 497 So.2d 575 (Ala.1986); Ex parte Beecher, 294 Ala. 674, 320 So.2d 727 (1975). In considering this argument in the light of the evidence shown by the record, I conclude that it might have influenced the jury in arriving at the verdict. Further, considering the argument and rulings thereon, I do not believe the judge's oral instructions to the jury were sufficient to eradicate from the minds of the jurors any impression they might have gotten from the prosecutor's improper argument.