146 So. 85

## WHITE v. STATE.
### 3 Div. 715.

Court of Appeals of Alabama.
Feb. 7, 1933.

H. C. Rankin, of Brewton, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant, one Morris, the deceased, and several other men had a "fish fry." All were friends, as evidenced by their conduct, as well as by the testimony in the case.

But deceased, Morris, who reached the scene of the party—a creek bank, out in the "country"—after appellant and some of the others had arrived and begun to "put out the fish net," brought with him some whisky; i. e., some whisky in bottles.

All took one or more drinks, with the possible exception of appellant; and the party "proceeded." Some "kindling was cut"; some torches lighted; some fires made; some chickens were dressed and fried; some other chickens "sent for"; some "target practice" indulged in; some "wrestling" done; some "arguing" performed; some "cursing" uttered; just a general "fish fry with whisky" time was had, until rather late in the evening (night)—the "party" getting under way shortly before, or about, sundown—when, apparently for no cause, deceased, after first "kicking over" the frying pan, struck appellant in the face with a "torch," then knocked him down, got down on him, etc.

This fight, if it may be called a fight, was over quickly; members of the party were searching for deceased in the creek, where he was heard to "splash"; another member examining himself for wounds; others issuing orders to each other to "take deceased to a doctor, etc"—all in the darkness, or at most by the light of a torch and some smouldering embers.

When the confusion had "cleared up," it was found that deceased was stabbed by a pocketknife; and he later died from the injury so inflicted.

Appellant admitted that he stabbed the deceased, etc., claiming that he did it to protect himself, etc.

The members of the "fishing party," who were the principal witnesses in the case, gave substantially, both those testifying on behalf of the state and those testifying on behalf of the appellant, similar accounts of the fatal occurrence. All were equally incoherent in their versions.

From the whole testimony it stands out clearly, without dispute, that deceased was the aggressor, and that his attack upon appellant was without apparent provocation.

The only litigable question in the case, as we read the evidence, was as to whether or not appellant used more force than was necessary in repelling the assault made upon him.

Deceased was a comparatively young man, and left a widow.

The trial of appellant was had less than thirty days after his (deceased's) death.

As appellant's counsel was arguing the case to the jury, detailing his version of what the testimony showed, etc., the widow of deceased, who must have been rather young, and is described by counsel as being "lovely" (as, indeed, her being a woman would prove she was), who was sitting immediately in front of the jury, dressed in mourning, rising, according to the bill of exceptions, in a most dramatic manner, interrupted said appellant's counsel, and cried out in a passionate voice: "That's not so! That didn't happen! And if Ed [the deceased, her husband, we interpolate] was here he would tell you so!"

According to said bill of exceptions, "at the moment of this interruption, the Presiding Judge for the time being, was off the bench, though he was in the court room."

No corrective action or other measure of any kind was taken by the court. Indeed, we are of the opinion, and hold, that nothing said learned court could have done would have remedied the harm that had been worked to appellant. We will not expatiate, dilate, nor descant. But we hold that for this occurrence appellant's motion for a new trial should have been granted, and that for the error in its overruling the judgment of conviction is reversed, and the cause remanded. See Collum v. State, 21 Ala. App. 220, 107 So. 35.

Reversed and remanded.