[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 262 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 263 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 264 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 265 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 266 
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, William Ray Weaver, was indicted on five counts of capital murder, including two counts of murder made capital because the killing occurred during the course of a robbery, see § 13A-5-40(a)(2), Code of Alabama 1975, and three counts of murder made capital because the killing occurred during the course of a burglary, see § 13A-5-40(a)(4), Code of Alabama 1975. A jury found the appellant guilty of one count of murder during the course of a robbery, as charged in Count I of the indictment. The jury recommended that the appellant be sentenced to death. The trial court followed the jury's recommendation and sentenced the appellant to die in the electric chair.
The evidence adduced at trial tended to show the following. On the night of Saturday, December 2, 1989, Aubrey Ray Estes planned to spend the night at his business, the Battery Mart, in Attalla. Estes's widow, Kathleen Estes, testified that her husband would sometimes sleep at the shop to guard the business. When Mr. Estes had not come home by Sunday evening, she said, she went to the Battery Mart and discovered her husband's body lying on the floor, his head covered with an army blanket. Mrs. Estes testified that she tried to telephone for help but that the telephone jack had been pulled from the wall. The Esteses' son, Pat, did an inventory of the store and discovered that $1,500 worth of batteries and cash was unaccounted for.
Henry Gene Whitmore and his cousin, Daniel Lee "Dino" Leslie, were the appellant's co-defendants in this case. Whitmore *Page 267 
testified that on December 2, 1989, he went by his aunt's house looking for Dino. Dino was not home, so he went to Dino's sister's apartment. Dino was there, along with the appellant and two more of Dino's sisters. Whitmore said he was drinking beer in the front room. He had also been sniffing gasoline. Whitmore said that he went into the kitchen to get another beer and that he overheard Dino, the appellant, and Bonnie Autwell, one of Dino's sisters, talking about getting some money; then they sent him out of the kitchen. Later, he said, the appellant asked him if he "wanted to ride over there with them." Whitmore said that he said yes, and that he and Dino rode with the appellant to the Battery Mart. Whitmore said the appellant parked the car in a field across the street from the Battery Mart, and that he then got a crowbar out of the trunk. He testified that the three of them slid through a gap in the gate of the fence surrounding the Battery Mart. The appellant tried to kick in the back door to the store, but then pried it open with the crowbar, Whitmore said. All three of the men went into the building.
Whitmore testified that he and Dino each went into a different storage room and that the appellant walked up the hall to the front of the store. He said that he grabbed a battery and started back out of the store when he heard someone shout, "What are you doing in here?" Whitmore testified that he saw Dino coming down the hall toward the back door. He said he also saw a man standing in the hall. Whitmore testified that the appellant, wielding the crowbar, chased the man into the office, and that he heard a "racket" coming from the office. He said that he and Dino ran out of the building, each carrying a battery. The appellant came out of the store two or three minutes later carrying the T-shirt he had been wearing, the crowbar, and some money. The three got in the car and the appellant drove back to Dino's sister's apartment.
Whitmore said that when they got back to the apartment, they put the stolen batteries in a closet. He said that he also got $10 in cash that had been taken from the store, but that he never saw the batteries or the crowbar again. He also said he did not know that the man who had approached them in the Battery Mart had died until a year after the incident.
Whitmore further testified that he was arrested for Estes's murder in June 1991. He was granted youthful offender status, and, after entering into a plea agreement with the State pursuant to which he agreed to testify against the appellant, he was sentenced to three years' imprisonment. He had completed his sentence when he testified in this case.
Faye Edwards is Whitmore's aunt and Dino's mother. She testified that late on the night of December 2, 1989, her sister, Whitmore's mother, had asked her to look for Whitmore. Edwards said she went to her daughter's apartment and saw Whitmore and the appellant carrying batteries into the apartment. She said she went inside, where she saw three batteries. The appellant, Whitmore, and a woman named Beverly were sitting around the table counting money, Edwards said. Whitmore was wearing a white T-shirt with blood spattered on it, she said, and Whitmore let her assume that he had been in a fight.
Edwards said that two days later, the appellant came to her house and asked to see her daughter Tina, with whom he had had a child. Edwards said that when he arrived the appellant had a "big roll of money." He told Edwards to "tell the God damn bitch I got the God damn money that she wanted even if I had to knock the old man in the head to get it."
She said that nearly a week after the visit, Whitmore came by her house and asked whether she wanted to buy some batteries. She testified that they were the same batteries she had seen at her daughter's apartment the night of the murder. She added that Whitmore had what appeared to be a crowbar wrapped in a white T-shirt in the car. Evidence was presented that eight or nine months after the murder, the appellant moved to Florida to live with his niece. He was arrested there and extradited to Alabama.
Dr. Joseph Embry of the Alabama Department of Forensic Sciences conducted the autopsy on Estes. He testified that Estes was *Page 268 
62 years old and weighed only 128 pounds at the time of his death. He said that Estes had suffered more than a dozen blows to the head, face, and body with a blunt object, leaving wounds consistent with having been beaten with a crowbar. Dr. Embry testified that Estes died from a combination of the head injuries, which caused injury to the brain, and heart disease. He further testified, however, that in his opinion, Estes would not have died had he not been beaten.
 I
The appellant argues that the trial court erred in instructing the jury that a defendant's flight to avoid prosecution could be considered as evidence of his guilt. The charge was improperly given, he contends, because, he says, there was no evidence of flight, there was no evidence that he was aware that he was the subject of a criminal investigation when he left Alabama, and the lapse of eight months between Estes's murder and the time the appellant left Alabama negates an inference of flight.
The trial court instructed the jury that "[a] defendant's flight to avoid prosecution may be considered by you as tending to show his consciousness of guilt." (R. 924.) The appellant maintains that he was prejudiced by that instruction because it served only to improperly suggest to the jury that he had fled prosecution out of consciousness of guilt.
"In determining whether an instruction concerning flight should have been given, the question is 'simply whether such evidence was presented.' " Williams v. State, 546 So.2d 705,707 (Ala.Crim.App. 1989) (quoting Ex parte McGee,383 So.2d 205, 206 (Ala. 1980)). Instructing a jury that it may use evidence of flight from which to infer the defendant's consciousness of guilt when there has been no evidence of flight presented is improper. Rogers v. State, 630 So.2d 88, 92
(Ala. 1992). Where there is no evidence of flight, an instruction on flight should not be given. Williams v. State,546 So.2d 705 (Ala.Crim.App. 1989).
 " ' "Analytically, flight is an admission by conduct. Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior of flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. . . .
" '. . . .
 " ' "Because of the inherent unreliability of evidence of flight, and the danger of prejudice its use may entail, a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences. . . .
 " ' ". . . The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.'
 "[United States v. Myers, 550 F.2d 1036, 1049-51
(5th Cir. 1977).]
 " 'As Judge Johnson put it in United States v. Borders, 693 F.2d 1318, 1325-26 (11th Cir. 1982), cert. denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983):
 " ' "Human experience teaches, however, that not every act of flight constitutes an expression of guilt. . . . Thus, the interpretation to be gleaned from an act of flight should be made cautiously and with a sensitivity to the facts of the particular case. . . .
 " ' "The cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. . . . . The Beahm-Myers line of cases [United States v. Myers, 550 F.2d 1036 (5th Cir. 1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), and United States v. Beahm, 664 F.2d 414 (4th Cir. 1981)] thus stands *Page 269 
for the proposition that the probative value of flight evidence is substantially weakened if the suspect was not aware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged.'
 " 'The above cases, both from this state and from other jurisdictions, clearly show that flight evidence can become so untrustworthy when there is no evidence that the flight was motivated by the suspect's knowledge of the crime charged that the evidence's probative value is outweighed by the prejudice it produces.' "
Rogers v. State, 630 So.2d 88, 91-92 (Ala. 1992) (citations omitted emphasis added in Rogers). See also Ex parte Jones,541 So.2d 1052 (Ala. 1989).
Testimony was presented by the defense that the appellant had moved to Florida eight or nine months after the crime to live with his niece. The appellant planned on living with his niece until he, his girlfriend, and their child could "get on their feet." There was also testimony that the appellant had a job in Florida. We agree that an instruction on flight may have been improper if the State had presented this testimony as evidence of flight. However, the defense introduced evidence that the appellant had left Alabama for Florida eight or nine months after the offense. This court fails to see how the appellant can complain about the court's instruction when he was the one to introduce this evidence to the jury. Johnson v. State,620 So.2d 679 (Ala.Crim.App. 1993); McCall v. State,501 So.2d 496 (Ala.Crim.App. 1986).
" 'It is well settled that flight is a circumstance which the jury may consider even where the conduct of the defendant tending to show flight is weak and inconclusive.' Bighames v.State, 440 So.2d 1231, 1234 (Ala.Cr.App. 1983)." Eddins v.State, 501 So.2d 574, 578 (Ala.Crim.App. 1986). The appellant introduced evidence that he had moved to Florida from Alabama because he had a job in Florida and he and his family were living with his niece until they could "get on their feet." From all the evidence presented, the jury could have inferred that the appellant left the State of Alabama for a reason other than those he testified to. Thus, the trial court's instruction was not error.
Further, the instruction in question consisted of one sentence in a charge to the jury that consisted of 32 pages of trial transcript. "[I]n review of a trial court's jury charge, individual instructions are not to be isolated or taken out of context, but must be considered in light of all the other instructions." Musgrove v. State, 638 So.2d 1360, 1365 (Ala. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 136,130 L.Ed.2d 78 (1994). The appellant was not prejudiced by the trial court's charge.
 II
Before trial, the appellant filed a motion to require the State to disclose to the defense any deals made with codefendants in exchange for their testimony. (C.R. 50-51.) At the hearing on the motion, the State argued that it was not sure if any of the appellant's co-defendants would testify and that, therefore, it did not have to disclose that information. The trial judge did not rule on the motion at the hearing. (R. 22-27.)
During trial, the State announced that it would be calling Henry Gene Whitmore, one of the appellant's codefendants. Defense counsel then argued that he should be entitled to cross-examine Whitmore concerning the details of any deals the State may have made with him in return for his testimony, including not challenging his request for youthful offender status. The State asserted that defense counsel should not be allowed to ask Whitmore about the youthful offender conviction because of the confidentiality with which those convictions are treated. The trial court ruled that defense counsel could question Whitmore about the details of any deal he may have made with the State, including his treatment as a youthful offender in this offense, but that he could not argue that Whitmore's credibility was affected by his youthful offender conviction. (R. 429-35.)
Defense counsel was then allowed to question Whitmore (R. 514-15) and Whitmore's attorney (R. 689-91) concerning the deal he *Page 270 
made with the State in exchange for his testifying against the appellant.
The appellant asserts on appeal that the State should have been required to disclose the deal made with Whitmore before trial.
 "In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court held that a jury was entitled to know of deals or consideration given in exchange for testimony. The Court held that jury knowledge of a deal between the State and a witness is relevant to an issue of the witnesses's credibility. Id."
Ex parte Bankhead, 585 So.2d 112, 121 (Ala. 1991), aff'd,577 So.2d 531 (1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242,116 L.Ed.2d 197 (1991). See also Kuenzel v. State,577 So.2d 474 (Ala.Crim.App. 1990); Kilpatrick v. State, 602 So.2d 465
(Ala.Crim.App. 1992); McMillian v. State, 616 So.2d 933
(Ala.Crim.App. 1993). Although the State should have disclosed to the appellant the information regarding Whitmore's agreement with the State before trial,
 "such error did not seriously affect the fairness or integrity of the proceedings against the appellant. Just as in Ex parte Firth, 493 So.2d 405
(Ala. 1986), '[t]he promise of immunity in question here was brought out by defense counsel at trial, and thus they were "fully able to make whatever use of it they desired during closing argument to the jury." United States v. Walker, 720 F.2d 1527 (11th Cir. 1983) [cert. denied sub nom. Gustin v. United States, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984)].' See also United States v. Bruner, 657 F.2d 1278 (D.C. Cir. 1981)."
Henderson v. State, 583 So.2d 276, 285 (Ala.Crim.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908,112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). See also McMillian v.State, 616 So.2d 933 (Ala.Crim.App. 1993). Thus, the State's failure to disclose this information to the appellant before trial was harmless error because the appellant was allowed to present this information to the jury during his cross-examination of Whitmore and his attorney and in his argument to the jury. (R. 858.) We note that defense counsel did not ask for any further remedies, such as a continuance, after the trial court ruled that he could question Whitmore about any agreement he made with the State in exchange for his testimony.
 III
The following colloquy occurred after opening arguments and just before the testimony of the victim's wife:
 "MR. HART: Your Honor, during Mr. Pitts's opening statements Ms. Estes sobbed loud enough for the jury . . . I looked at my watch and by my count in the 11 minutes I heard her sob 24 times loud enough for me to hear seated at my table. I'm sure it was loud enough for the jury to hear some 24 times in 11 minutes, maybe more times than that before I started counting. I think at this point we have no recourse but to ask for a mistrial based on the emotional display.
 "THE COURT: Well, after we had all the argument I made it a point to observe her during all the proceedings to this point. I didn't see any over-reacting or display of emotions that would really, in my opinion, affect a jury adversely. So she did sniff a few times. I didn't — Of course, I'm not that good at hearing, but I didn't hear her sniff to tell you the truth. What says the State?
 "DEPUTY DISTRICT ATTORNEY PITTS: I agree with your assessment. I mean I heard it, but it wasn't a loud outburst of emotions.
 "THE COURT: I'm going to deny your motion at this point. I would caution you to caution her to try not to display her emotions.
 "DEPUTY DISTRICT ATTORNEY PITTS: I have. My opinion is that she is doing her very best to do that.
 "THE COURT: Your motion is denied. Let's proceed."
(R. 464-65.)
 A
The appellant contends that the trial court erred by failing to grant his motion for a mistrial. *Page 271 
 "In McNair v. State, 653 So.2d 320, 329
(Ala.Cr.App. 1992), this Court held:
 " ' "As a general rule, a demonstration by, or the misconduct of, a bystander or spectator during a criminal trial — including even a disturbance having a tendency to influence or disturb the jury — is not deemed to be sufficient reason for the granting of a new trial unless it appears that the rights of the accused were prejudiced thereby, and, generally, in the absence of a showing to the contrary, it will be assumed that the jury was not prejudiced; similarly, manifestations of grief by spectators related to the victim of a crime, as a general matter, will not alone furnish good ground for a new trial, a showing being required that the case of the accused was prejudiced by such conduct."
 " 'Annot., 31 A.L.R.4th 229, 234-35 (1984). This same general rule also applies to emotional manifestations made while testifying. 31 A.L.R.4th at 235-36. See Hall v. State, 500 So.2d 1282, 1290-91 (Ala.Cr.App. 1986) (rape victim cried during her testimony); Smith v. State, 37 Ala. App. 116, 118, 64 So.2d 620, 621, cert. denied, 258 Ala. 647, 64 So.2d 622 (1953) (assault victim "cried aloud" during testimony); James v. State, 44 Ala. App. 593, 595, 217 So.2d 545, 547 (1969) (assault with intent to rape victim cried twice during testimony); Lee v. State, 265 Ala. 623, 627, 93 So.2d 757, 761
(1957) (wife of deceased murder victim "sobbing" while testifying); Duff v. State, 40 Ala. App. 80, 83, 111 So.2d 621, 624 (1958), cert. denied, 269 Ala. 696, 111 So.2d 627 (1959) (mother of deceased murder victim "crying out loud" during prosecutor's opening statement). This rule applies in capital cases. See Henderson v. State, 583 So.2d 276, 287 (Ala.Cr.App. 1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
 " 'The emotional manifestations present rise nowhere near the level presented in Collum v. State, 21 Ala. App. 220, 221, 107 So. 35, 35-36
(1926) (new trial required where in a prosecution for seduction, the prosecutrix fainted in the witness chair, and mother came to her aid weeping and crying, "Nobody knows how much we have suffered over this trouble. Lord have mercy on us.") and White v. State, 25 Ala. App. 323, 324, 146 So. 85 (1933) (new trial required where widow of murder victim contradicted defense counsel during his closing argument).
 " 'Here, as in Smith, 37 Ala. App. at 118, 64 So.2d at 621: "The trial judge witnessed the incidents. To him must of necessity be committed a wide discretion in determining whether or not the occurrences affected the rights of the accused to a fair, impartial trial." We find no merit to the appellant's argument that the prosecution should have been required to call witnesses who were not members of the victim's family.'
 "See also Uldric v. State, 43 Ala. App. 477, 480, 192 So.2d 736, 739, cert. denied, 280 Ala. 718, 192 So.2d 739 (1966) (mistrial properly denied where judge promptly instructed and admonished jury to disregard outburst by widow of deceased)."
DeBruce v. State, 651 So.2d 599 (Ala.Crim.App. 1993), aff'd,551 So.2d 624 (1994). The trial judge, who could observe the victim's wife during this time, was in a much better position than this court to determine whether her sobbing affected the appellant's right to a fair and impartial trial. We cannot say that the trial judge abused his discretion by failing to declare a mistrial.
 B
The appellant claims that the trial court should have instructed the jury to disregard the emotional outbursts of the victim's wife. The appellant failed to request such an instruction when the motion for a mistrial was made or during the wife's testimony at trial. In Crymes v. State,630 So.2d 120, 123 (Ala.Crim.App. 1993), aff'd, 630 So.2d 125 (Ala. 1993), this court held that the failure to request such an instruction failed to preserve this issue for review. Further, the trial court's failure to give such an instruction on its own does not amount to plain error. *Page 272 
 C
The appellant contends in a footnote to his brief to this court that he "does not concede that Ms. Estes had a right to be seated at counsel table." (Appellant's brief, p. 23, n. 3.) However, we note that § 15-14-50, et seq., Code of Alabama 1975, gives a victim or a victim's representative a right to sit at the counsel table during the course of a trial. Williamsv. State, 601 So.2d 1062, 1079 (Ala.Crim.App. 1992). This right applies in capital cases. Coral v. State, 628 So.2d 954
(Ala.Crim.App. 1992).
 IV
After the jury was struck in this case, the appellant made aBatson motion, alleging that the State had used three of its strikes to discriminate against black veniremembers. The trial court required the State to give its reasons for those strikes without finding that the appellant had established a prima facie case of discrimination. The State gave the following reasons for striking these jurors.
 "DEPUTY DISTRICT ATTORNEY PITTS: Okay, number nine is G.B. According to his questionnaire, he was arrested just in April for an assault charge. Also K.C., number 10, I believe did not respond but I have personal knowledge that she is the sister of R.C., who we have prosecuted on numerous occasions in our office. And number 23 is C.J., who indicated in his questionnaire that his brother was a convicted felon, having served 18 months in the penitentiary. I will note that not only did I strike blacks for that reason but I also struck whites from this panel." (R. 416-17.)
Clearly, "striking a prospective juror who has a past conviction or who has a family member with a past criminal history has been held to be a race-neutral reason. Thomas v.State, 611 So.2d 416 (Ala.Cr.App.), cert. denied, 611 So.2d 420
(Ala. 1992); Baker v. State, 555 So.2d 273 (Ala.Cr.App. 1989)."Bennett v. State, 659 So.2d 174 (Ala.Crim.App. 1994) However, the appellant contends, citing Ex parte Bird,594 So.2d 676 (Ala. 1991), that because the information on which the State based its strike, i.e., that K.C.'s brother had been prosecuted by the district attorney's office, was not reflected on the jury questionnaire, the State should have asked K.C. if the person who was prosecuted was related to her. "A mere suspicion that a veniremember is related to a former defendant is not a race-neutral reason to deny that person the opportunity to serve on a jury. Floyd v. State, 539 So.2d 357
(Ala.Cr.App. 1987)." Carroll v. State, 639 So.2d 574, 575-76
(Ala.Crim.App. 1993). " 'If the prosecutor thinks that a veniremember may be related to a former defendant, [the prosecutor] must ask the veniremember.' Ex parte Bird,594 So.2d 676, 683 (Ala. 1991)." Allen v. State, 659 So.2d 135
(Ala.Crim.App. 1994).
The case at bar is clearly distinguishable from Bird and the other cases cited above. Here, the State had more than a suspicion that K.C. and the person whom the district attorney had prosecuted were related. The prosecutor stated that he had "personal knowledge" that K.C.'s brother had been prosecuted by the district attorney's office. Thus, the State gave a race-neutral reason for striking K.C. See also Jones v. State,611 So.2d 466 (Ala.Crim.App. 1992); Naismith v. State,615 So.2d 1323 (Ala.Crim.App. 1993).
The evidence showed that the State also struck whites because they or their relatives had criminal convictions. "[W]here whites and blacks are struck for the same reason, there is no evidence of disparate treatment. Carrington v. State,608 So.2d 447, 449 (Ala.Cr.App. 1992)." Macon v. State, 659 So.2d 221
(Ala.Crim.App. 1994) See also Williams v. State,634 So.2d 1034 (Ala.Crim.App. 1993). We do not find that the trial court's ruling on the appellant's Batson motion was clearly erroneous. Nance v. State, 598 So.2d 30, 31 (Ala.Cr.App. 1992).
 V
The following is a portion of the trial court's oral charge to the jury:
 "Now first in a general vein, in almost every case that comes to trial in court there are usually conflicts in the evidence. Logically if there were no conflicts or differences in the evidence, there wouldn't be *Page 273 anything for you to decide. So in almost every case that I know of there are always conflicts in evidence and usually it is conflicts that we are dealing with — a large part of them are made up of conflicts in testimony of witnesses. One of the things you need to know about is witnesses. How should you approach witnesses to make a determination of whether that particular witness has spoken the truth? Well, there is one general rule about that for jurors. If you feel like a particular witness has spoken or testified falsely or untruthfully about any material matter, then you, as a juror, have the prerogative of disregarding all or parts of that witness's testimony. Also in regard to witnesses, you should look at the witnesses to tell the truth, the way they appear to you from the witness stand, whether you think a particular witness has testified frankly or evasively. You can take into consideration their demeanor, the way they appear, their mannerisms and things of that nature. You can consider whether a particular witness may have exhibited some bias or may have some bias about this case. What I'm really telling you in regard to witnesses is to use your common sense and your knowledge of things in determining what the truth is from the various witnesses. As I stated, you are the judges of the facts in this case, and in passing on the believability of witnesses use your common sense, use your knowledge of every day affairs and your experiences of life and use those tools to assist you in arriving at the truth from the evidence that has been presented in this trial." (R. 898-99.)
The appellant argues that the portion of the trial court's charge highlighted above invaded the province of the jury to determine credibility because, he says, it reduced the significance of the conflicts in the testimony of the witnesses in this particular trial.
First, we note that the appellant failed to object to the trial court's charge on this ground.
 "In capital cases, failure to object does not preclude review of the issue by the appellate courts. However, such failure weighs against any claim of prejudice. Dill v. State, 600 So.2d 343
(Ala.Crim.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993); Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied 502 U.S. 886, 112 S.Ct. 242, 116, L.Ed.2d 197 (1991)."
Slaton v. State, [Ms. CR-89-848, January 13, 1995] ___ So.2d ___ (Ala.Crim.App. 1995).
Secondly, " 'the court's charge in its entirety stated the correct principles of law with regard to the credibility of witnesses,' Weaver v. State, 568 So.2d 309, 312 (Ala.Cr.App. 1989); accord Touart v. State, 562 So.2d 625, 627 (Ala.Cr.App. 1989)." Daniels v. State, 650 So.2d 544, 561 (Ala.Crim.App. 1994).
 VI A
The appellant contends that the testimony of his accomplice, Whitmore, was insufficiently corroborated by other testimony. Section 12-21-222, Code of Alabama 1975, provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows commission of the offense or the circumstances thereof, is not sufficient."
As Judge Taylor, writing for this court, recently stated inWilson v. State, [Ms. CR-92-1223 and CR-93-2132, January 13, 1995] ___ So.2d ___ (Ala.Crim.App. 1995):
 " 'The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a "subtraction process." The test is generally stated:
 " ' "(F)irst, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. . . ." ' *Page 274 
 "McCoy v. State, 397 So.2d 577, 585 (Ala.Cr.App.), cert. denied, 397 So.2d 589 (Ala. 1981)."
Clearly, the testimony of Faye Edwards tends to connect the appellant with the capital murder of the victim. She saw the appellant on the night of this offense carrying batteries and counting money. The appellant told her two days later that he had to "knock the old man in the head" to get money. We find Edwards's testimony was sufficient corroboration of Whitmore's testimony.
The appellant also contends that Edwards's testimony should not be believed because her son, Dino Leslie, was also an accomplice and she was trying "inculpate Mr. Weaver in this crime in order to exculpate her son." (Appellant's brief, p. 38.) The weight and credibility of corroborating evidence is a question for the jury. King v. State, 356 So.2d 1216
(Ala.Crim.App. 1977).
 B
The appellant states that the trial court erred by failing to instruct the jury that it was required to find sufficient corroboration for Whitmore's testimony. We cannot find any evidence in the record that the appellant ever requested such a charge or objected to the court's failure to give such a charge. While the trial court should have instructed the jury on the need for corroborative evidence of Whitmore's testimony,
 "the failure to do so does not mean that this cause must automatically be reversed. Automatic reversal exists only when the error 'necessarily render[s] a trial fundamentally unfair.' Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Alabama has applied the harmless error analysis in a case involving the death penalty to the failure of the court to instruct the jury on the principle of accomplice corroboration. Gurley v. State, 639 So.2d 557
(Ala.Cr.App. 1993); Frazier v. State, 562 So.2d 543, 558 (Ala.Cr.App.), rev'd on other grounds, 562 So.2d 560 (Ala. 1989)."
Burton v. State, 651 So.2d 641, 653-54 (Ala.Crim.App. 1993), aff'd, 651 So.2d 659 (Ala. 1994), cert. denied, ___ U.S. ___,115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
 " '[T]he error of failing to instruct the jury on the need for corroborative evidence is harmless when the testimony of an accomplice has in fact been corroborated. Frazier v. State, 562 So.2d 543, 558 (Ala.Cr.App.), reversed on other grounds, 562 So.2d 560 (Ala. 1989). Accord People v. Brunner, 797 P.2d 788, 790 (Colo.App. 1990); State v. Brown
[187 Conn. 602], 447 A.2d 734, 740 (Conn. 1982); Ali v. United States, 581 A.2d 368, 377-78
(D.C.App. 1990), cert. denied, 502 U.S. 893, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991); Strong v. State, 261 Md. 371, 275 A.2d 491, 495 (1971), vacated on other grounds, 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 760 (1972); State v. England, 409 N.W.2d 262, 265 (Minn.App. 1987).' "
Burton, 651 So.2d at 654, quoting Gurley v. State,639 So.2d 557, 561 (Ala.Crim.App. 1993). The failure of the trial court in this case to give an instruction on the necessity of corroborating evidence of an accomplice does not constitute plain error in light of the fact that Whitmore's testimony was corroborated by Edwards's testimony.
 VII
The appellant argues that the district attorney's office should have recused from this case because one of the assistant district attorneys had represented Whitmore before the attorney was employed by the district attorney's office. In Jackson v.State, 502 So.2d 858 (Ala.Cr.App. 1986), an assistant district attorney had represented the defendant before joining the district attorney's office. This court found that no actual conflict of interest existed because the lawyer did not bring any of the defendant's records with him to the district attorney's office, he did not discuss the defendant's case with anyone at the district attorney's office, he did not participate in the prosecution of the defendant, and his representation of the defendant occurred before his employment at the district attorney's office.
 "In Hannon [v. State, 48 Ala. App. 613, 266 So.2d 825 (1972)], the defendant conferred with a public defender who was *Page 275 
later elected District Attorney. The District Attorney, however, did not take part in prosecuting his former client and did not give his assistants any information derived from conversations with the defendant. We affirmed this conviction, finding no breach of the attorney-client relationship."
Terry v. State, 424 So.2d 710 (Ala.Crim.App. 1983).
It does not appear that the assistant district attorney who had previously represented Whitmore participated in his prosecution or revealed any information regarding the appellant's case to anyone in the district attorney's office. His representation of Whitmore occurred prior to his employment with the district attorney's office. We do not see how the appellant was prejudiced in this regard. The trial court correctly denied the appellant's motion to require the district attorney's office to recuse.
 VIII
During the cross-examination of Whitmore and Edwards, defense counsel questioned these witnesses concerning earlier inconsistent statements they had made to the police. On redirect, the State also questioned these witnesses about their earlier statements and introduced the statements into evidence. The appellant contends this was error.
In Byrd v. State, 51 Ala. App. 234, 237-38, 283 So.2d 683
(1973), this court addressed a similar situation.
 "It is also assigned as error that the lower court permitted the state to prove the balance of a prior written statement after defendant on cross examination of the same witness had introduced a portion of the statement as impeachment of the witness. The case of Patterson v. State, 191 Ala. 16, 67 So. 997 [(1915)], declares the rule to be that the whole of a document should not ordinarily be admitted but only the contradictory part and the appellant relies strongly on this authority. This holding, however, is subject to other cases which say that admittance of the whole or the contradictory part rests in the discretion of the trial court, 1 McElroy on Evidence 379 and cases therein cited, and, further, if a contradictory statement in a document is so interwoven with a noncontradictory statement therein as to render it impracticable to show the contradictory statement without also showing the noncontradictory statement, the whole of the document is admissible, Kennedy v. State, 85 Ala. 326, 5 So. 300 [(1888)], 1 McElroy, supra. The ruling of the trial court in this regard is in accord with the authorities cited above and the contentions of appellant are not on solid foundation. The ruling of the court below was without error in this regard."
Before the admission of these statements, the trial court stated:
 "What I think the general rule is you go through all these different inconsistent statements in a document, interwoven with consistent statements and statements that are neither consistent or inconsistent because they weren't brought up, then the best course of action to me to get to the truth of the matter is to offer the whole document. Now, besides that if there is something in one of these documents that is so outlandish or prejudicial or some other rule of evidence that it ought not to be seen by the jury, then let's talk about that." (R. 673.)
From our review of the record and the statements in question, we find that the trial court did not abuse its discretion by admitting these statement into evidence.
 IX
The appellant contends that the State should have been required to elect between the five counts of the indictment. The first two counts of the indictment charged the appellant with intentional murder during the course of a robbery and the three remaining counts charged the appellant with intentional murder during the course of a burglary. The different counts of the indictment did not charge the appellant with different offenses. Counts I and II charged alternative methods of committing intentional murder during the course of a robbery and Counts III, IV, and V charged alternative methods of committing intentional murder during the course of a burglary. (C.R. 6-7.) *Page 276 
 "The general rule is that the trial court will not exercise its power to compel an election unless it appears either from the indictment or the evidence that an attempt is being made to convict the defendant of two or more offenses growing out of separate and distinct transactions. Williams v. State, 383 So.2d 547 (Ala.Crim.App. 1979), aff'd, 383 So.2d 564 (1980), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293
(1980)."
Floyd v. State, 486 So.2d 1309, 1313 (Ala.Crim.App. 1984). See also Stewart v. State, 601 So.2d 491 (Ala.Crim.App. 1992). We note that the appellant was convicted only on Count I of the indictment.
 X
The appellant contends the trial court erred by not approving his request for $3,000 to hire an investigator to help in preparing his defense. We note that in Ex parte Dubose,662 So.2d 1189 (Ala. 1995), the Alabama Supreme Court held that
 "the principles enunciated in Ake [v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)], grounded in the due process guarantee of fundamental fairness, apply in a case of nonpsychiatric expert assistance when an indigent defendant makes a proper showing that the requested assistance is needed for him to have 'a fair opportunity to present his defense.' 470 U.S. at 76
[105 S.Ct. at 1092]."
In this case, a hearing was held on the appellant's request for funds for expert assistance. At the hearing, the trial court stated:
 "Okay. So it is obvious that $500 is the cap on noncapital cases. If it is a capital case there are going to be more expenses, but I can't go with the $3,000, just a figure pulled out of the air. If there is some discretion there for the Court, why don't I just make it $1,000 each attorney instead of $500 and then if you can come back later on and prove and show to the Court that you need more, then maybe I could approve it then because it appears like you have got to come in and show me why you need it exactly and have some kind of hearing to make an intelligent determination that you are going to need that much money for expenses. (R. 45-46.)
The trial court did not err by refusing to approve the request for $3,000 from the defense. Defense counsel was given $1,000 and was told he could ask for more if it was needed. There is no evidence in the record that defense counsel made any further request for money for expert assistance. Therefore, no error occurred.
 XI
The appellant contends that the prosecution suppressed exculpatory evidence in violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 A
First, the appellant contends that the prosecution improperly suppressed the results of a polygraph test given to Henry Griffin. At a hearing on the motion for a new trial, a police officer for the City of Gadsden testified that he had administered a polygraph test to Griffin. He said that he asked four relevant questions of Griffin but that he was able to interpret the results of answers to only two of those questions. The questions were as follows: "Are you involved in any way in the death of that man at the Battery Mart?" "Were you physically present when that man was hit at the Battery Mart?" Griffin answered no to each of these questions. The officer felt that the appellant's response to the first question was deceptive but that his response to the second question was truthful.
There was evidence presented that the district attorney's office never knew about the polygraph examination of Griffin until the appellant filed his motion for a mistrial following the trial. Defense counsel, however, knew during trial that Griffin had taken a polygraph test because Griffin told him that he had taken a test and passed. In Spellman v. State,500 So.2d 110, 115 (Ala.Crim.App. 1986), this court addressed a similar issue. In that case, we held:
 " 'In order to establish a Brady violation, appellant must prove: (1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence *Page 277 
for the defense; (3) The materiality of the suppressed evidence.' " Knight v. State, 478 So.2d 332 (Ala.Cr.App. 1985). While the appellant has shown that the State did not provide the information to the trial court as ordered, he has failed to establish the favorable character or the materiality of the questions and answers. At most, it appears that the answers given by certain witnesses during the polygraph examination might have been used for impeachment purposes at trial if their trial testimony varied. Brady applies to exculpatory material, and it is evident that the material at issue here did not rise to this level. Undisclosed evidence is material under the Brady
rule only if it is reasonably probable that the outcome of the trial would have been different if it had been disclosed. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). This was not the situation in the instant case. Furthermore, no timely objection was made by the appellant regarding the State's failure to comply with the court's order, until the conclusion of the trial, when he made his motion for a new trial. We, therefore, find no error in the trial court's ruling denying appellant's motion for a new trial on these grounds."
In this case, there is not a witness who testified at trial who could have been impeached with the results of the polygraph examination of Griffin. Griffin did not testify and neither did Dino Leslie, who, in only one of his many statements to the police, stated that Griffin had been involved. The appellant has failed to show that there is a reasonable probability that the result of this trial would have been different had this information been provided to the appellant before trial. Further, even though defense counsel knew during trial that Griffin had taken a polygraph examination, he waited until after trial to object to the State's failure to disclose this information. The trial court did not err by failing to declare a mistrial on this ground.
 B
The appellant contends that the State failed to timely disclose information that Dino Leslie was not employed at Shoney's restaurant on the night this offense occurred. Several witnesses had testified that Leslie was employed there that night. This information was in the district attorney's files, which were made available to defense counsel two weeks before trial and the appellant admits that this information was disclosed to him before trial. The appellant's argument must fail because the State did not fail to disclose this information. Ex parte Cammon, 578 So.2d 1089 (Ala. 1991);Gibson v. State, 580 So.2d 38 (Ala.Cr.App. 1990). Nettles v.State, 601 So.2d 132 (Ala.Crim.App. 1992).
 XII
The appellant contends that the evidence was insufficient to support his conviction for capital murder because, he says, the State failed to prove that he had the specific intent to kill. The appellant argues that because Dr. Embry testified that the victim's heart disease was a contributing cause of death, the nature of the assault could not be used to prove intent. "An intent to cause the death of the deceased may be inferred from the character of the assault, the use of a deadly weapon and all other attending circumstances surrounding the death of the deceased." Fears v. State, 451 So.2d 385, 387 (Ala.Crim.App. 1984). See also Swann v. State, 412 So.2d 1253 (Ala.Crim.App. 1982); Tucker v. State, 383 So.2d 579 (Ala.Crim.App.), cert.denied, 383 So.2d 586 (Ala. 1980). Dr. Embry testified that the victim received more than a dozen blows to his head, face, and body. He said that the victim's wounds were consistent with having been beaten with a crowbar. Whitmore testified that he saw the appellant chasing the victim with a crowbar. Dr. Embry testified that he had no reason to believe that the victim would have died if he had not been beaten. The evidence presented by the State was sufficient to prove that the appellant had the specific intent to kill.
 XIII
The appellant claims that he was denied his right to a speedy trial. *Page 278 
 "In order to determine whether an accused's constitutional right to a speedy trial has been violated, this court must look at the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant resulting from the delay. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972). Applying these factors, we find that the defendant was denied his right to a speedy trial."
State v. Woods, 600 So.2d 425, 427 (Ala.Crim.App. 1992). In determining the length of delay, we have reviewed the case action summary sheet and the evidence presented at the hearing on the speedy trial motion. The length of delay in this case is approximately 23 months.[1] In Coral v. State, this court found that the appellant was not prejudiced by a 22-month delay. In making that determination in Coral, we considered that the case was a capital case and that there were numerous delays that were attributable to the defense. We further noted that the defendant waited 16 months to assert his speedy trial right.
This case was originally set for trial the week of October 21, 1991. On October 21, the appellant asked for and was granted a continuance. The appellant then requested a psychiatric evaluation. On January 27, 1992, defense counsel objected to the appellant's being evaluated on an outpatient basis. This further delayed the proceedings because it appears that the appellant had to wait until there was a place available to secure evaluation at the Taylor Hardin Secure Medical Facility. However, it appears that the appellant was evaluated on an outpatient basis in April 1992. Thus, almost a year of the delay resulted from the granting of requests of defense counsel. "The State is not responsible for delays that result directly from the defendant's actions." Broadnax v.State, 455 So.2d 205, 207 (Ala.Cr.App. 1984).
In the hearing on the speedy trial motion, defense counsel argued that the appellant was prejudiced because he was not tried during the summer of 1992. However, defense counsel admitted during the hearing that he was not prepared to go to trial in the summer of 1992. Furthermore, the appellant did not invoke his speedy trial right until February 1993, approximately 18 months after he was arrested in Florida.
This case, like Coral, was a complicated capital case that involved numerous motions and hearings. This court finds that under the circumstances of this case, the length of delay in this case was not "presumptively prejudicial" and, therefore, it is unnecessary to examine the other factors set out inBarker. However, in an abundance of caution, this court has examined the other Barker factors and has concluded that the appellant was not denied his right to a speedy trial.
 XIV
The appellant contends that the trial court erred by denying his motion to conduct individual voir dire of the venire.
 " 'In Alabama, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court.' Coral v. State, 628 So.2d 954, 968 (Ala.Cr.App. 1992). 'The fact that the appellant's case involved capital murder is not alone reason to require individual voir dire. . . . A trial court's decision in denying individual voir dire examination of a jury panel will not be disturbed on appeal absent an abuse of that discretion.' Smith v. State, 588 So.2d 561, 579 (Ala.Cr.App. 1991). See also Henderson v. State, 583 So.2d 276, 283 (Ala.Cr.App. 1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992)."
Taylor v. State, 666 So.2d 36 (Ala.Crim.App. 1994). The trial court denied the motion for individual voir dire "except as to possible prejudicial questions and Request of Defense Counsel to be questioned separately." (C.R. 64.) Further, the trial court told the jurors *Page 279 
that if they felt uncomfortable answering a voir dire question in front of the whole venire, they could make any additional information known to the trial court and the attorneys in private during recess. It is clear to this court that the trial court did not abuse its discretion in this instance.
 XV A
The prosecutor made the following remarks during rebuttal in closing argument:
 "It is kind of like the deal about the statement and what was or wasn't said to the Attalla Police Department. Ronnie Lee and Coy Rigsby were sitting right out there in that hall this morning. Why didn't they ask them in front of you what their version of it was instead of coming to you and saying 'well, you just need to speculate and decide.' Faye Edwards couldn't have been scared of this man here. He was down in Florida since back in 1990. Well, who told you that? They want to make a big deal about family, but two family members of this family — and one of them said 'well, Coy Rigsby called and told me they were investigating him.' And you are supposed to take that and believe it. Coy was right outside. Why don't they let him confirm that to you? No, we are just going to lay these family members out and you are supposed to take their word for it that he was down there in 1990 and Coy Rigsby made a call down there in 1990 and told Billy Ray Weaver he was under investigation as a suspect in a murder. You are supposed to believe the defendant's family, but you are supposed to discard the witnesses because they are family." (R. 888-89.)
The appellant contends that the highlighted portions of the prosecutor's remarks were a reference to the failure of the defendant to call Lee and Rigsby, who were equally available to both parties.
We must first note that the appellant failed to object to this argument and his failure to do so must be weighed against any claim of prejudice. Kuenzel v. State, 577 So.2d 474
(Ala.Crim.App. 1990), aff'd, 577 So.2d 531 (1991), cert. denied,502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
While it is true that " 'one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available to both sides.' Hunt v. State. supra, [453 So.2d 1083, 1087 (Ala.Cr.App. 1984)],", Stubbs v. State,522 So.2d 317 (Ala.Crim.App. 1987), the prosecutor's comments were a reply in kind to defense counsel's closing argument concerning what two defense witnesses stated to these police officers and what these officers told them. (R. 850-58, 872-74.)
 "Therefore, the district attorney's remarks were a reply in kind to the argument of defense counsel, and therefore do not violate the general rule that a party may not comment unfavorably on the other party's failure to call a witness equally available to both sides. See Stockard v. State, 391 So.2d 1049 (Ala.Crim.App. 1979)."
Helton v. State, 433 So.2d 1186 (Ala.Crim.App. 1983). See also Dossey v. State, 489 So.2d 662 (Ala.Crim.App. 1986).
 B
The appellant contends that the prosecutor's leading of the State's witnesses was "absolutely egregious." Again, the appellant failed to object to the prosecutor's leading of the witnesses.
 "This issue was not preserved by objection at trial and we find no plain error. 'Whether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error.' Bradford v. Stanley, 355 So.2d 328, 331
(Ala. 1978)."
Taylor v. State, 666 So.2d 36 (Ala.Crim.App. 1994). See alsoBurton v. State, 651 So.2d 641 (Ala.Crim.App. 1993), aff'd,651 So.2d 659 (Ala. 1994), cert. denied, ___ U.S. ___,115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
The appellant has cited numerous references to the alleged leading questions posed by the prosecutor. We have reviewed each *Page 280 
of these and find that none amounts to plain error.
 C
The appellant alleges that the prosecutor "improperly injected himself, his experiences, his opinions, and his own morality" into the appellant's trial. (Appellant's brief, p. 65.) Again, the appellant has merely cited us to numerous pages in the record in which the prosecutor allegedly acted improperly. We have thoroughly examined each of these references in the record and we find no plain error.Johnson v. State, 620 So.2d 679 (Ala.Crim.App. 1993); Taylorv. State, 666 So.2d 36 (Ala.Crim.App. 1994).
 D
The following remark was made by the prosecutor during closing argument:
 "You bet it was because she was scared of him. He had threatened her. She was afraid to tell it all. The last statement was one day, if I recall correctly, before Billy Weaver was actually arrested. Since then, since June of 1992, two years ago, Billy Ray Weaver has been incarcerated behind bars." (R. 830.)
The appellant contends that it was improper to inform the jury that the appellant had been incarcerated since his arrest.
There was no objection to this remark and, thus, the failure to object weighs against any claim of prejudice.Kuenzel. Furthermore, the appellant was not prejudiced by the prosecutor's remark because defense counsel introduced evidence of the appellant's incarceration during the testimony of one of the defense witnesses. Walter Timothy Norris, the husband of the appellant's niece, testified that the appellant was arrested in July of 1991. Defense counsel asked Norris if the appellant had been able to make bond since his arrest and Norris replied that, to his knowledge, he had not made bond. Therefore, this issue is without merit.
 E
The following remark was made during the prosecutor's rebuttal in closing argument:
 "Mr. Buttram early on in his argument indicated that Faye Edwards said 'Do you want the truth?' We are in court. That's what we are here for, and then we just saw 30 minutes of smoke screen and deception just then. That's not really meant to be slanderous or whatever. Defense lawyers have to do that a lot of times." (R. 886.)
The appellant contends that these remarks "denigrated, disparaged and insulted defense counsel." (Appellant's brief, p. 68.)
"Prosecutors are given 'wide latitude in their exhortations to the jury.' Armstrong v. State, 516 So.2d 806, 809
(Ala.Crim.App. 1986). Even if these statements constituted error, they certainly do not rise to the level of plain error. SeeKuenzel." Dill v. State, 600 So.2d 343 (Ala.Crim.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924,113 S.Ct. 1293, 122 L.Ed.2d 684 (1992).
 XVI
The appellant contends that victim impact evidence was erroneously admitted into evidence during the guilt phase of the trial. Specifically,
 "Ms. Kathleen Estes, the victim's widow, testified that she had lived in Etowah County for sixty years, that she and Ray Estes had gotten married in 1955, that Ray Estes had worked in radio and then at the steel plant until 1984 when he went into the battery business, that Estes had started sleeping at the Battery Mart because he did not have insurance and his previous business had been broken into repeatedly." (Appellant's brief, p. 70.)
Recently, in Ex parte Rieber, 663 So.2d 999 (Ala. 1995), the Alabama Supreme Court held that the testimony of the victim's husband regarding the victim's "children, their ages, and the status of their custody after the murder was not relevant with respect to the question of his guilt or innocence and, therefore, that it was inadmissible in the guilt phase of the trial."
Estes's testimony concerning the reason the victim was at the Battery Mart on the night in question was certainly relevant to this case and was admissible. However, the length of her marriage to the victim and the *Page 281 
victim's employment history were irrelevant with respect to the appellant's guilt or innocence, and, therefore, according toRieber, were inadmissible.
However, the Alabama Supreme Court held in Rieber that a harmless error analysis can be applied "if the record shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant." We note that there was no objection to this witness's testimony on this ground and, therefore, the admission of this evidence would have to constitute plain error for us to reverse the judgment on this ground. The admission of this evidence does not amount to plain error. See Taylor v.State, 666 So.2d 36 (Ala.Crim.App. 1994). The outcome of this trial did not turn on Mrs. Estes's testimony concerning the length of her marriage to the victim or his employment history. The admission of the victim impact evidence in this case clearly did not affect a substantial right of the appellant.
 XVII A
The appellant contends the trial court's instruction constituted error because, he says, it implied that the jury had to find that the mitigating circumstances had to be proved beyond a reasonable doubt. The appellant contends the trial court erroneously instructed the jury with regard to the burden of proof as to mitigating circumstances. The following are the relevant portions of the trial court's charge to the jury.
 "All right, under [§] 13A-5-45 of the Code it states the matters that we are dealing with here today, one of which in paragraph e it says 'at the sentence hearing the State shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances.' So in regard to the law as to the matters offered by the State then, as far as the level or standard of proof by the State, it must be — on aggravating circumstances the standard is beyond a reasonable doubt. So that is the standard you would use in giving the evidence in regard to aggravating circumstances offered by the State.
 "In addition it states that the defendant shall be allowed to offer any mitigating circumstances and it states what sections those arise in. I will give those in a moment to you. So that's the levels we deal with as far as proof on aggravating and mitigating circumstances. As to the State it is beyond a reasonable doubt, and then this section s says that the defendant shall be allowed to offer any mitigating circumstances as defined in other Code sections. So that's where we are at on aggravating and mitigating.
". . . .
 "Now, under [§] 13A-5-48 of the Code, it tells you about aggravating and mitigating circumstances. I have already given you the information about the standard you use in determining those, and then you have got a different standard when you deal with the aggravating and mitigating circumstances. It states 'the process described in the previous Code sections [that I just alluded to] of weighing the aggravating and mitigating circumstances to determine the sentence shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison. Instead, it shall be defined to mean a process by which circumstances relevant to sentence or marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances in an individual case is life imprisonment without parole or death.' In other words, as I read this Code section, although you use the standard of beyond a reasonable doubt in determining aggravating circumstances, that is not the standard you use after you have determined what the aggravating circumstances are, if any, and the mitigating circumstances are, if any. When you have those two, then it is a weighing process by you, the jury, and not beyond a reasonable doubt or any other standard. It is a weighing process. I will explain that again to you in just a moment. *Page 282 
 ". . . So, as I understand what the State has argued, these are the two things that they are presented to you for your consideration as aggravating circumstances and, as I state, those two aggravating circumstances that they have offered the standard is for you to accept those it must be on the standard of beyond a reasonable doubt and to a moral — well, it says 'beyond a reasonable doubt,' according to the Code section.
 "Now, on mitigating circumstances, the defendant has a right to present those to you and I charge you, members of the jury, that you should have the right — or you can consider these mitigating circumstances if you feel like the evidence has shown these mitigating circumstances." (R. 1034-39.)
The appellant contends the trial court's instruction was error because it implied that the jury had to find proof of the mitigating circumstances beyond a reasonable doubt. While we admit that the trial court's instruction is confusing at times and that the trial court never instructs the jury as to what the appellant must present with regard to mitigating circumstances, we do not find that the charge would have caused the jury to believe that the appellant had to prove mitigating circumstances beyond a reasonable doubt. The court's instruction states only that the State must prove the aggravating circumstances beyond a reasonable doubt. The court further instructed the jury that the appellant had the right to present mitigating evidence and that the jury should consider that evidence if it found the evidence mitigating. There is no plain error here.
We must note that before the court gave its charge, the court made the following statement:
 "After scanning all I could scan on this subject — and y'all correct me if you disagree — but the aggravating-mitigating circumstances has to be proven by the same standard as in a regular case, beyond a reasonable doubt, but in weighing them that standard does not apply to the jury. It is just a matter of weighing aggravating-mitigating." (R. 966).
If the trial court had instructed the jury in the manner reflected in this remark, then we would have found plain error. Mitigating circumstances do not have to be proven beyond a reasonable doubt. Morrison v. State, 500 So.2d 36
(Ala.Crim.App. 1985), aff'd, 500 So.2d 57 (1986), cert. denied,481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207; Cochran v. State,500 So.2d 1161 (Ala.Cr.App. 1984). However, the court's instruction does not include, either specifically or by implication, the erroneous information contained in the above statement.
 B
The appellant contends that the trial court implied to the jury that its findings as to mitigating circumstances had to be unanimous and that in doing so violated Mills v. Maryland,486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and that, therefore, the trial court should have instructed the jury that its findings as to mitigating circumstances did not have to be unanimous. We note that the appellant failed to object on this ground. However, we have carefully reviewed the trial court's instruction and do not find that the court's instruction would have led the jury to believe that its findings as to mitigating circumstances had to be unanimous. Windsor v. State, [Ms. CR-91-1487, June 17, 1994] ___ So.2d ___ (Ala.Crim.App. 1994). There is no plain error here. Rieber v. State,663 So.2d 985 (Ala.Crim.App. 1994), aff'd, 663 So.2d 999 (Ala. 1995);Coral v. State, 628 So.2d 954, 985 (Ala.Crim.App. 1992), aff'd, 628 So.2d 1004, cert. denied, ___ U.S. ___,114 S.Ct. 1387, 128 L.Ed.2d 61 (1984).
 XVIII
The appellant alleges that the prosecutor's comments and the trial court's instructions to the effect that the jury's sentence verdict was advisory and was only a recommendation violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633,86 L.Ed.2d 231 (1985).
 " 'The comments of the prosecutor and the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was "advisory" and a "recommendation" *Page 283 
and that the trial court would make the a final decision as to sentence does not violate Caldwell.' Kuenzel at 502 (quoting Martin v. State, 548 So.2d 488, 494 (Ala.Crim.App. 1988), aff'd, 548 So.2d 496 (Ala. 1989), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989)). See also Smith v. State, 581 So.2d 497 (Ala.Crim.App. 1990), rev'd on other grounds, 581 So.2d 531
(Ala. 1991)."
Johnson v. State, 620 So.2d 679, 706 (Ala.Crim.App. 1992).See also Brown v. State, [3 Div. 964, January 13, 1995] ___ So.2d ___ (Ala.Crim.App. 1995). The prosecutor's comments and the trial court's instructions "accurately informed the jury of its sentencing authority and in no way minimized the jury's role and responsibility in sentencing." Johnson, 620 So.2d at 706. We must also note that the appellant failed to object to the court's instructions or the prosecutor's comments on this ground.
 XIX
The appellant contends that he was punished twice for the same act because murder during the course of a robbery was an element of the capital offense and was also as an aggravating circumstance. This argument has been addressed and rejected by this court. Windsor v. State, [Ms. CR-91-1487, June 17, 1994] ___ So.2d ___ (Ala.Crim.App. 1994); Hutcherson v. State,677 So.2d 1174 (Ala.Crim.App. 1994); Burton v. State,651 So.2d 641 (Ala.Crim.App. 1993).
 XX
The appellant contends that a statement made in the trial court's sentencing order was error. In the order, the trial court stated, "It is the opinion of the Court that the mitigating circumstances heretofore enumerated are insufficient to outweigh the aggravating circumstances." (R. 121.) While this portion of the trial court's order is technically defective, this court in Fortenberry v. State, 545 So.2d 129
(Ala.Crim.App. 1988), aff'd, 545 So.2d 145 (1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990), held that this error was "not so egregious or substantial as to require a new sentencing order." " 'As long as the trial judge properly exercises his discretion and the facts indicating the death penalty are "so clear and convincing that virtually no reasonable person could differ," a harmless error analysis can be used.' Baldwin v. State, 456 So.2d 117, 126 (Ala.Cr.App. 1983), affirmed, Ex parte Baldwin, 456 So.2d 129, 140 (Ala. 1984), cert. denied, 469 U.S. 1085, 105 S.Ct. 589,83 L.Ed.2d 699 (1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300
(1985)." Fortenberry.
Here, the trial court considered two aggravating circumstances and found that they were sufficient to support the sentence of death. It is clear that the trial court did not fail to consider any statutory or nonstatutory mitigating circumstances and properly engaged in a weighing and balancing process of the aggravating and mitigating circumstances in this case. We find that the facts indicating the death penalty in this case are clear and convincing and that no reasonable person would differ in their opinion. The error in the trial court's sentencing order was error without injury.Fortenberry, Taylor v. State, 666 So.2d 36 (Ala.Crim.App. 1994).
 XXI
This court is required by § 13A-5-53, Code of Alabama 1975, to review the propriety of the appellant's sentence of death and to examine the record for plain error.
We have reviewed the trial court's findings concerning the aggravating and mitigating circumstances in this case. The trial court found two aggravating circumstances: 1) that the capital offense was committed while the appellant was engaged in the commission of a robbery in the first degree, and 2) that the capital offense was committed while the appellant was under a sentence of imprisonment. As to the mitigating circumstances, the trial court reviewed all of the statutory mitigating circumstances and also considered nonstatutory mitigating circumstances.
 "More particularly, the Court considered the fact that a co-defendant, Henry Gene Whitmore, received a sentence of 3 years to capital murder in connection with this crime. The Court further took into consideration that the defendant had not previously been convicted of any felony involving *Page 284 
the use or threat of violence to any person. The Court also found the existence as mitigating circumstances that defendant had a good work record from date of parole until his arrest in June, 1991 and that his behavior in the County Jail while awaiting trial was acceptable and that he has a loving and caring members in his family." (R. 120.)
Our review of the record leads us to conclude that the trial court's findings are supported by the record. We find no evidence that the appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the appropriate and proper sentence in this case.
Furthermore, the appellant's sentence of death is not disproportionate to the penalty imposed in similar cases, considering the crime and this appellant. See Beck v. State,396 So.2d 645, 654, n. 5 (Ala. 1980).
Pursuant to Rule 45A, A.R.App.P., we have thoroughly reviewed the record in this case, and we find no error that adversely affected this appellant's rights during either the guilt or sentencing phase of this trial. The appellant's conviction for this capital offense and his sentence of death are proper. The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
[1] The appellant was arrested on another charge in Florida on July 31, 1991, and was extradited to Alabama. The appellant was indicted for this offense on September 6, 1991, and he was arrested on this indictment on September 21, 1991. The appellant's trial began on June 22, 1993.